# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

SALLIE B. TEMPLE, ET AL. v. MARY ELLINGTON.

January 13, 1941.

Record No. 2267.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and
Spratley, JJ.

*L. J. Hammack, A. S. Harrison, Jr.,* and *B. A. Lewis,* for the plaintiffs in error.

*Langhorne Jones, Joseph Whitehead* and *E. P. Barrow,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The subject of our review is the correctness of a judgment rendered in an action for damages sustained by Mary Ellington as a result of a collision between a Ford automobile in which she was a rear-seat passenger and a "pick-up" truck. The Ford automobile was owned and operated at the time by John A. Moses. The truck was owned and operated by John R. Temple. The action was brought by Mary Ellington against Sallie B. Temple and others, administrators of the estate of John R. Temple, who was killed as a result of the collision.

The trial of the case resulted in a verdict for the defendants. The trial court was of opinion that the verdict was not supported by the evidence. It held that the evidence disclosed as a matter of law that Mr. Temple

drove his truck from a private road into a public highway when the car driven by Mr. Moses was approaching dangerously near and that Temple's conduct, as a matter of law, constituted negligence which, concurring with that of Moses, was the proximate cause of the injuries to Mrs. Ellington. The trial court therefore set aside the verdict and awarded a new trial to be had on the question of damages alone. In this latter trial the jury fixed the damages of Mrs. Ellington at $11,000, and the court entered judgment in her favor against the administrators for that amount.

If the court were in error in setting aside the verdict in the first trial then this court will restore it, enter judgment thereon, and annul all subsequent proceedings.

The collision occurred on a clear day at around eleven A. M. on state highway number 58, which is straight and runs east and west. A private road runs from the "Reps Jones Farm" and intersects the highway approximately at a right angle on its south side. Lawrenceville is some four miles to the east of this point and the town of Broadnax is to the west. The highway has a twenty-one foot hard surface with level, wide shoulders, and approaching the intersection from the west there is a descending grade for approximately five hundred feet. A clear view of the highway looking from the intersection to the west, the direction from which the Moses car was being driven, can be had to the brow of a hill, some five hundred feet away. After that distance is reached the highway descends to the west, and at five hundred and sixty feet the hill obstructs the view.

The farm house of the "Reps Jones Farm" is on an elevation. It is on the south side of the highway and is reached by the private road. This road as it leaves the highway descends and the grade is not uniform. To the right, as one approaches the intersection from the west, as Mr. Moses was doing, there is a field in which wheat

was growing two and a half to three feet high at the time.

Witness Brewer, who lived on the "Reps Jones Farm," in testifying for the defendants said that the growing wheat did not obstruct the view. That is, one driving on the highway from the west to the east could see a vehicle approaching on the private road a considerable distance before the intersection is reached.

Mr. Temple visited the "Reps Jones Farm" in the morning of the day of the collision and upon leaving drove over the private road to the highway. He had entered the highway and, proceeding to the west, had reached a point about four feet from the north edge of the hard surface and nineteen and a half feet west of the center of the intersection when his truck was struck by the Moses car, which was proceeding easterly down grade.

The truck at the time of the impact was practically on the north side (its right-hand side). Mrs. Brewer, an eyewitness for the defendants, said that from the farm house where she was she saw the side of the truck; that it had almost straightened out when struck but was still slightly "cater-cornered" in the highway.

The jury was taken to the scene of the collision and observed the physical surroundings.

There were many photographs of the scene and two plats filed as exhibits.

There were seven persons riding in the Moses automobile, a Ford coach,—three on the front seat and four on the rear seat. Mr. Temple was alone in his truck. Mrs. Moses, who was riding on the front seat of the Ford, was killed instantly. Mr. Temple died the next day as a result of the impact.

Mrs. Ellington, the plaintiff in the present action, was a passenger in the automobile and was riding on the rear seat. Her action was against the administrators alone. She did not join Mr. Moses, the operator of the car in which she was riding, as a defendant, though the trial

court has held as a matter of law that the concurrence of his negligence and that of Mr. Temple was the proximate cause of her injuries.

The legal effect of the verdict in the first trial was to establish that Mr. Temple was free from any negligence which was the proximate cause of the plaintiff's injuries or which efficiently contributed thereto.

██ ██ If there was more than a scintilla of credible evidence tending to establish that the sole proximate cause of the injuries to Mrs. Ellington was the negligence of Mr. Moses, then a jury question was presented and the verdict in the first trial was sufficiently supported by the evidence. If, however, all of the credible and substantial evidence showed that Mr. Temple was guilty of such negligence as was the proximate cause or the efficiently contributing or concurring cause of the plaintiff's injuries then the question was for the court and not for the jury.

We must determine which tribunal, the court or the jury, should have measured the conduct of Mr. Temple. If it were the province of the jury then the court should not have disturbed the verdict.

The physical facts and the photographs disclose that there was a terrific impact. The front of the Ford struck the left side of the truck at the door of the cab. The Ford was almost demolished. Leading up to the point of impact there were tire marks of the Ford for thirty-nine feet on the highway, made by the application of the brakes. The force of the impact drove the truck forty-seven feet back in the opposite direction and turned it over on its right side. It was in second gear. The Ford after the impact moved in an arc for thirty-seven feet down the highway before it stopped.

The tire and other marks established that the collision occurred on the north side of the highway. This was the proper side for the truck and the improper side for the car of Mr. Moses. The tire marks of the Moses car ran from the center of the highway and for thirty-nine

feet bearing gradually to the left-hand side until they reached the point of impact on the north side of the highway.

Code, §2154 (124), provides that the driver of a vehicle entering a public highway from a private road shall, immediately before entering the public highway, stop, and upon entering the highway he shall yield the right of way to all vehicles approaching on such public highway.

The plaintiff contends that Mr. Temple violated that section of the Code. She also contends that he entered the public highway when the Moses car was approaching dangerously near.

The statute must be given a reasonable construction. It does not grant an exclusive privilege to drivers on the public highway regardless of their duty to obey traffic laws and to exercise reasonable care to protect the rights of others. When a driver on a private road approaches an intersection, stops, and looks in both directions for approaching traffic on the public highway, acting as a reasonably prudent person exercising due care would act, he is not negligent as a matter of law if he attempts to enter the intersection under the belief that he has time and opportunity to cross safely. He is only required to yield the right of way to those lawfully approaching so near the intersection that he cannot safely enter it. The driver of any vehicle traveling at an unlawful speed forfeits "any right of way which he might otherwise have hereunder." Code, §2154 (123).

There were three eyewitnesses who testified. They were Mr. Moses, Mrs. Lucy Dix, and Mrs. Sophia Brewer. Mrs. Dix, a passenger on the rear seat of the Moses car did not give a clear account of the accident. She said, "I looked up * * * and just as I looked up I seen the bumper of this truck coming out into the highway and I said 'Lord have mercy upon me' and I folded my arms and by that time I was gone. I never knew more." She did not state whether the Temple truck could have

been seen before it entered the highway or how far it was away from the Moses car when it entered the highway. She gives none of the details of the occurrence.

Mr. Moses and Mrs. Sophia Brewer each give an account of the occurrence. Their evidence is in conflict. The trial court evidently did not think Mrs. Brewer's account was entitled to credence because she was too far away.

Mr. Moses gives the following account of the collision: "I was proceeding east on Route 58, on the right-hand side of the road, of course. I saw Mr. Temple's truck entering the road. He was driving, as near as I could estimate the speed under the circumstances, about 20 to 25 miles an hour,—what I would consider a rather rapid rate of speed to be entering the highway.

"I saw if he did not slow down,—I realized the moment my eyes rested on him, that he did not intend to stop.

"I realized I was faced with an emergency and I put my hand on the horn, my foot on the brake and veered to the left, all one series of motions. Mr. Temple came out of the side road—he didn't come out and turn as if it was one of these little buttons at a street corner, but he come out and turned in that direction, and he was cross-ways of the road, and as I veered my car I struck him broadside in the middle of his truck at the door."

Later Mr. Moses said that when he first saw Mr. Temple he "was at the edge of the road. Just how far it was from the actual edge of the road I can't say, because as I told you before, I realized I was confronting a dangerous situation, and I was dangerously close to him when I first saw him." Mr. Moses was asked how far away he was from the intersection when Mr. Temple drove into the highway. He answered, "I would say when I first saw Mr. Temple that I was approximately the distance from here to the back wall from him." That distance was measured by the sheriff at the direction of the court and proved to be thirty-three feet, five inches.

Mr. Moses said he was driving from forty to forty-five miles per hour, and "I could not see Mr. Temple, and I did not see him until he was out of the road (private road) and actually entering the road (highway)." There was no warning sign or other indication that there was an intersecting road. According to Mr. Brewer, Mr. Moses could have seen the Temple truck a considerable distance before it reached the highway. There was no other traffic on the highway at or near the intersection. Mr. Moses testified that Mrs. Ellington, Miss Ellington, and Mrs. Dix had requested him not to drive fast before they left Chatham. He was rendered unconscious from the impact.

At the time of the purchase of the car Mr. Moses had what is known as a "Columbia high-speed axle" installed in the car. He said it was installed to obtain better gasoline mileage. It increases the possible rate of speed twenty-eight and one-half per cent, according to the testimony.

Mrs. Brewer lived on the "Reps Jones Farm." From her home a good view of the highway could be had. She watched Mr. Temple leave the farm from her window. She said she watched him as he drove down the private road and into the highway. When he drove into the highway she saw the Moses car. At that time she said the Moses car was about "15 feet east of the third telephone pole." The distance the Moses car was from the intersection at the time Mr. Temple drove into the highway, according to measurements based on Mrs. Brewer's testimony, was about three hundred and sixty-one feet.

Mrs. Brewer was asked to indicate the position of the Moses car on the highway when Mr. Temple drove into the highway. This was done by an experiment. A camera was placed in the window from which she observed the car and truck. Then a truck to represent Mr. Temple's truck was driven into the intersection from the private road and a car to represent the Moses car was placed on the highway in the position of the Moses car. With

the truck and the car placed in their respective positions a picture of them was taken from the window of Mrs. Brewer's home. The picture is one of the exhibits and is identified as exhibit number 20. It was shown to the jury and from it they could have estimated the distance between the vehicles, which were plainly visible in the highway.

Mrs. Brewer was asked if she saw the positions of the Ford and the truck plainly. She replied in the affirmative. She said the position of the vehicles truly represented those of Mr. Moses and Mr. Temple to her best recollection. Exhibit number 1 is a photograph taken from the highway looking down the private road to the Brewer home. It is quite evident from exhibits number 1 and 20 that vehicles moving along the highway are plainly visible to one looking from the home of Mrs. Brewer.

There is no testimony as to whether or not Mr. Temple stopped before entering the intersection. A fair reading of the testimony of Mrs. Brewer discloses that she made no positive statement that he did stop or that he did not. She said, in brief, that she could not tell. Mr. Moses did not know whether Temple stopped; he stated several times that the first time he saw the truck it was entering the highway. The presumption, in the absence of evidence to the contrary, is that Temple did stop and that he looked for oncoming traffic.

The most important fact in the case was the distance the Moses car was from the intersection when Mr. Temple drove into it. Mr. Moses testified unqualifiedly that it was the distance from the witness chair in which he was sitting to the rear wall of the courtroom, which was only thirty-three feet, five inches. He said when he first saw the truck he immediately blew the horn, applied his brakes, and turned to the left to avoid the truck, yet the tire marks in the highway made by his car from the application of his brakes extended thirty-nine feet from the point of impact. If the known reaction time to ap-

ply the brakes is computed at the speed of forty-five miles per hour, Moses is bound to have been considerably farther away when he first saw the Temple truck. Thus the physical evidence may have caused the jury to discredit his testimnoy. The jury in weighing his testimony may have concluded that instead of being some thirty-three feet from the Temple truck when he first saw it he was a much greater distance away. The jury were not required to believe that he was only thirty-three feet away when the Temple truck was seen or could have been seen.

While it is true Mr. Moses had the right of way at this particular intersection if he were proceeding lawfully, it is also true that Mr. Temple did not have to assume that he would encounter any vehicle being operated at an excessive speed. If the Moses car was being operated at an illegal rate of speed it would come from a point of obscurity to the point of impact in a few seconds. At five hundred and sixty feet west of the intersection it could not have been seen on account of the obstruction created by the hill. For instance, if it were moving at forty-five miles per hour it would have covered the distance in about eight and one-half seconds. If traveling fifty-five miles per hour it would have covered the distance in about seven seconds. If traveling sixty-five miles per hour the distance would have been covered in about six seconds. The jury could have reasonably believed that Mr. Temple stopped his truck before going on the highway and looked but did not see the Moses car because it was obscured by the hill and before he could get his truck straightened out on the highway he was struck. Or the jury might have believed that Mr. Temple saw the Moses car and acting as a prudent person thought the car far enough away to permit him safely to enter the highway ahead of the Moses car. In other words, whether Mr. Temple was justified in going into the highway under the circumstances was for the

jury. It was the tribunal to say whether the Moses car was or was not dangerously near.

The jury by their verdict evidently found Mr. Moses guilty of operating his car at an excessive speed. The trial court approved that finding. Likewise the jury found Mr. Temple free from any negligence which was the proximate cause of the collision. If the jury discredited the testimony of Mr. Moses and believed that of Mrs. Brewer, this was within their province. An inference of excessive speed on the part of Moses may be drawn from the force of the impact and the damage to the vehicles even though Moses testified that he was driving at a lawful speed. 15-16 Huddy, *Automobile Law*, §179.

The collision occurred on Mr. Temple's side of the highway. If Mr. Moses had remained on his side the accident would not have occurred. The tire marks of his car begin in the center of the highway. The jury could have concluded that Moses was not driving on his side of the highway.

The jury could have concluded that Mr. Moses did not keep a proper lookout. There is evidence tending to show that he might have seen the Temple truck approaching the highway in time to have averted the collision if he had looked at the proper time and place.

The jury could have reasonably concluded from the evidence that the excessive speed of the Moses car, the failure to drive on his right side of the highway, and his failure to keep a proper lookout, singly or combined, constituted the sole proximate cause of the plaintiff's injuries.

It is needless to cite and quote from our many decisions in which we have stated over and over again the principles controlling the functions of the court and the jury in cases like the present one.

*Otey* v. *Blessing*, 170 Va. 542, 197 S. E. 409, relied upon by the plaintiff, is distinguishable on the facts. The principle applied there is controlling here. There the

verdict was for the plaintiff and this court upheld it. The case was left to the jury. Otey was not held guilty of negligence as a matter of law. He was found guilty as a matter of fact by the jury.

*Walker* v. *Crosen,* 168 Va. 410, 191 S. E. 753, presents entirely different facts.

The judgment is reversed; the verdict for the defendants rendered in the first trial is reinstated and judgment is now rendered upon it. Subsequent proceedings are annulled.

*Reversed.*

SPRATLEY, J., dissenting.

The sole question for our consideration is whether John R. Temple, deceased, was guilty of negligence which proximately contributed to the collision of a truck driven by him with a passenger car driven by John A. Moses.

The facts are, with slight variances, substantially the same as stated in *Temple* v. *Moses,* 175 Va. 320, 8 S. E. (2d) 262, which case arose out of the same collision.

The only variance in the evidence, which it is necessary to consider, is in the testimony of Mrs. Brewer in the two cases. No contention is made that Mrs. Ellington, a passenger in the Moses' car, was guilty of contributory negligence. The verdict of the jury settled the question of the negligence of Moses for the purposes of this case.

The learned trial judge filed a written opinion. In setting aside the verdict of the jury for the personal representatives of Temple, he held that the evidence clearly showed that both Temple, the driver of the truck, and Moses, the driver of the car in which Mrs. Ellington was a mere guest, were guilty of concurring negligence, which was the efficient and proximate cause of Mrs. Ellington's injuries. The evidence, as I read it, fully sustains his views.

Mrs. Brewer, in this case, admitted that in the former case she testified positively that Temple slackened his speed as he drove his truck from the private road into the highway; but that he did not make any stop before entering therein. She now says, months later, that she still thinks he did not stop; but that she is not sure whether he did or not. She explains this later lack of absolute certainty as solely due to her reaction to experiments made in the meantime in her presence with a car similarly placed to that of Temple, whereby it was shown to her that the experimental car, which she thought had simply slowed down in its progress in the lane, had, in fact, been actually stopped.

Whatever weight we give to the later evidence of Mrs. Brewer, proof of the negligence of Temple in entering the highway is not solely dependent upon whether he stopped his truck or not. Even if he stopped his truck before entering the main highway, it was equally his duty to exercise care to see that he could enter it safely. Upon entering the highway he was required, under the statute, to yield the right of way to all vehicles on the highway. Virginia Code 1936, section 2154 (124).

Whatever may have been the speed of Moses, at some other time during the day, there is the positive and uncontradicted evidence that immediately before the collision he was driving at a lawful rate of speed; that when Moses first saw the Temple truck it was actually entering upon the highway from the lane; that as soon as he saw it he sounded his horn, applied his brakes, and steered his car to the left in an effort to avoid striking it; that the truck was diagonally across the road at the time of the collision and was hit near the center; that the truck had come out of the "Y" shaped entrance to the lane and had reached a point less than 5 feet from the north side of the hard surface of the highway, a distance of 19 feet 6 inches from the center of the intersection; and that as Temple came out of the lane, if he had looked to his left up the highway, he could have

seen an approaching car for a distance of 500 feet up the road in the direction from which Moses' car was approaching.

Thus, the physical facts and the circumstances positively show that, no matter what may have been the actual speed of Moses' car, if Temple had kept a proper lookout upon entering the highway, he could have seen the approaching car. If he saw the approaching car, either after stopping and looking, or drove out of the lane without stopping and without looking, he was guilty of negligence in entering upon the highway in front of it.

"One emerging from a private premises is bound to anticipate and expect the presence of vehicles on the highway and to be vigilant in keeping a lookout for their approach, especially where the view is obstructed, the duty to look implies the duty to see what is in plain sight unless some reasonable excuse for not seeing is shown." Huddy, Cyc. of Automobile Law, vol. 3 and 4, p. 222, Sec. 135.

"Reasonable caution and prudence should dictate that a traveler, before entering a main artery of travel from a private driveway, should look for vehicles, which might reasonably be expected thereon and wait until he could safely enter into the highway. A motorist entering a highway must look for traffic thereon in such a manner that the purpose of looking is accomplished and he is under a duty to see what is in plain sight unless some reasonable excuse for not seeing is shown." 2 Blashfield Cyc. of Automobile Law and Practice, Perm. Ed., Sec. 1163, p. 307.

A high degree of vigilance was required of Temple upon entering the highway from a lane which was below the level of the intersecting arterial highway. The collision could have been averted by him if he had stopped and looked, or looked when looking was effective and, upon observing the approaching car, waited for it to pass. To stop alone was no guarantee of safety. To enter a highway after stopping but without looking is

as ineffective as to enter without stopping and without looking. The stopping is required to afford a better opportunity for looking. Ordinary care and prudence require such a lookout as will accomplish the purpose of looking. A failure to look when looking is effective is a failure to exercise due and ordinary care.

In *Otey* v. *Blessing*, 170 Va. 542, 197 S. E. 409, where a collision occurred between two automobiles to the left of the center of an intersection of an arterial highway, this court said:

"There can be no doubt about Otey's neglect. The stop sign standing at the crossing and the mandate of the statute (Code, sec. 2154 (132)), gave to cars on the highway the right of way. Yet having stopped and when this fast approaching car was between 18 or 20 steps away and in plain view he attempted to pass in front of it. It was almost a suicidal movement. To stop and not to look is inexcusable and inexplainable.

"The trouble in this case is that Mr. Otey went upon the Lee Highway without looking and while he said that Blessing was running at a terrific rate of speed, yet by his own testimony it is plain that he, (Otey), did not see Blessing until at the moment of the accident. The facts are against him, we find no reversible error in the record."

In the instant case, if Temple had looked he would have seen the approaching car, and if he had delayed his entry for only a very short time the delay would have permitted the approaching car to pass in safety.

So, it seems to me that wheher Temple stopped and failed to observe a lookout, or whether he failed to stop and entered the highway without looking, the fact of negligence still remains. In any event, the exercise of the ordinary rules of caution and prudence would have disclosed to him an approaching car which would in all likelihood strike his truck if he proceeded into the highway. The failure to keep a lookout, whether he stopped

or not, and to yield the right of way to the passing car was in violation of the statute and contrary to prudence.

In this case all testimony of speed, save that of Moses, and all testimony of distances are matters of speculation and approximation. Mrs. Brewer, the wife of the tenant of the farm owned by the Temple estate, admitted that in the trial of *Temple* v. *Moses, supra,* in which case a judgment was recovered by Moses against Temple and sustained by this court, she testified positively and affirmatively that Temple did not stop before entering the highway. Notwithstanding the uncertainty produced upon her mind by experiments in the movement and stopping of cars, she here was still of the opinion that Temple did not stop. She does not contradict or repudiate her former testimony. In effect, her evidence is that Temple did not stop. Experience teaches us the value to be placed upon such evidence.

The impressions upon which the estimates were made were gathered in a fleeting glance, and subject to the clouding influence of passing time, continued discussions and interrogations. No one had time in the emergency to take anything like an accurate measure of time and distance. The persons involved in the collision, who took any notice, were busy seeking to protect themselves, and Mrs. Brewer, engaged in her own household duties, did not think a collision was about to take place. Who knows but that in the event of another suit between some of the persons involved in the collision, there may be found other changes in the estimates of speed and distance.

It would be a harsh rule of law to hold Moses guilty of negligence in not seeing the top portion of the cab of a truck, across a field of growing wheat, about to enter an arterial highway from an unmarked private lane of the character here described. It is a peculiar rule that would excuse a person from stopping or looking before entering a highway from such a lane.

It should not be overlooked that the negligence of Moses was not imputed to Mrs. Ellington.

There is no evidence, as I see it, that the excessive speed of the Moses' car or the failure of Moses to keep a proper lookout was the sole proximate cause of the plaintiff's injuries.

The majority opinion disregards evidence of the reasons assigned for the car of Moses being on the wrong side of the road at the time of the collision and, in estimating the distance within which the car of Moses could have been stopped in the elapsed time after the drivers of the two cars must have seen each other, leaves out of consideration the fact that the two cars were traveling towards each other.

The inevitable conclusion is that Temple did not look to his left before entering the highway. If he had looked, he was bound to have seen the approaching car. The failure to keep a proper lookout and to take advantage of what it disclosed was an efficient and proximate cause of the collision. At the least, it was such concurrent negligence on the part of Temple as proximately contributed to the damages inflicted upon an innocent person.

For the foregoing reasons the judgment of the trial court should be affirmed.

EGGLESTON, J., concurs in this dissent.