# Richmond

## NEHI BOTTLING COMPANY, INCORPORATED v. FRED O. LAMBERT.

March 7, 1955.

Record No. 4324.

Present, Eggleston, Spratley, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*Joseph S. Gillespie* and *Smith & Perry*, for the plaintiff in error.

*Boggess & Coates* and *John W. McClintock, Jr.*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This writ of error brings under review the record of the second trial of an action instituted by Fred O. Lambert against the Nehi Bottling Company, Incorporated, to recover damages for personal injuries sustained in a collision between an automobile driven by the plaintiff and a truck operated by an agent of the defendant. On a trial held May 28, 1953, the jury were unable to agree upon a verdict; but upon the second trial held on September 3, 1953, they returned a verdict for plaintiff in the sum of $15,000, on which the trial court entered judgment.

While the petition of the Nehi Bottling Company, Incorporated, hereinafter referred to as the defendant, contains five assignments of error, the decisive question presented is whether the evidence, considered in the light most favorable to the plaintiff below, convicts him of contributory negligence.

The collision occurred about 6:30 p. m. on April 15, 1952, on U. S. Highway No. 460, in the Town of Cedar Bluff, Tazewell County, Virginia. Highway No. 460 runs approximately east and west through the Town of Cedar Bluff. The highway has a hard surface twenty-three feet wide. The collision took place on the hard surface in front of and nearly opposite the eastern end of a two-story frame building, referred to as the Sergant Produce Market. Situated on the south side of the highway, the market building is near the eastern limits of the Town of Cedar Bluff. It has a porch extending along its entire frontage on the highway. There is an open parking space about twenty-four or twenty-five feet wide between the porch and the hard surface of the highway. The open area is used by the Sergants, the owners of the market, in loading and unloading trucks which back up to the porch with their front ends

extended towards the highway. Immediately to the east of the building is a large parking area, which, with the area in front of the building, is used for parking cars by persons who trade at the market.

Highway No. 460 curves to the right as it runs out of a deep rock cut near the western side of the market building, then ascends a considerable grade towards the hill known as Claypool, and continues to another right-hand curve, which begins about three hundred feet east of the market building. The highway has a white center line dividing the east and west traffic lanes. The speed limit in the Town of Cedar Bluff was twenty-five miles per hour, indicated by signs at the entrance to the town.

On the late afternoon of April 15, 1952, Fred O. Lambert, fifty-seven years of age, a rural mail carrier by occupation, came to the Sergant Produce Market. Accompanied by his son, James Milton Lambert, he was driving a Chevrolet two-door automobile. He stopped and parked his automobile in the space south of the highway near the eastern end of the market building. The position of the parked car was parallel to the hard surface of the highway, facing in an easterly direction towards Claypool Hill. There was at that time a truck backed up to the loading porch of the Sergant building near the eastern half of the porch, and south of Lambert's automobile.

The plaintiff and his son got out of their car, went into the market building and bought some items of produce. They stayed there but a short time and then returned to their automobile. Baylor Sergant followed them out to their car, where he talked to the younger Lambert for a few moments.

Fred O. Lambert testified that when Baylor Sergant left them he started his car. Intending to return to his home west of Cedar Bluff, he turned to the right and made a "U" turn in the parking area, south of the highway. He then drove to the edge of the highway and stopped, and looked both to his right and left, and saw that he "had a pretty

clear vision" in each direction of "something like one hundred and fifty feet." He said he saw nothing on the highway, and "pulled out in the road." As he "pulled out," he continued to look and still did not see anything on the highway. He was then knocked unconscious. He said he never saw the object that hit his automobile. He did not remember how far his automobile had gotten on the highway before it was hit. He did not say how long he remained at a stop beside the highway before entering upon it.

On cross-examination, plaintiff declared that the only way he could account for the accident was that the truck "was flying." He admitted, however, it could at least be seen while traveling the distance of one hundred and fifty feet in question. He further stated that the truck backed up to the porch of the market building did not block his view after he had "pulled over near the highway."

Baylor Sergant, called as a witness for the plaintiff, testified that when he turned from the Lambert car, he walked back to the market building as the Lamberts were "pulling out." He said he did not pay any further attention to them, so did not actually see them as they started their automobile. As he reached, and was walking along the porch of the market building, about twelve or thirteen feet from its western or lower end, he observed the truck of the defendant about one hundred or one hundred and fifty feet distant on the highway headed east, and running about thirty-five or forty miles an hour. He then heard the sound of a collision, and immediately went to the highway where he saw that the Nehi truck and the automobile of the plaintiff had collided. On cross-examination, he said that he could not be exact as to the speed of the truck when he saw it approaching; that it could have been only twenty-five miles, as trucks generally appeared to be traveling pretty fast as they came out of the cut and ran around the curve.

James Milton Lambert, twenty-one years old, said that after his father turned his car in the parking space and came to the edge of the highway, he looked in both directions,

told his father the highway was "all clear, go ahead;" that they then entered the highway; and that was the last thing he remembered. He was knocked unconscious, and remained in that condition for sometime.

On the morning of the accident, William Vance Dunford, Jr., twenty-one years of age, driving a one and one-half ton Dodge truck of the defendant, had left the plant of the defendant in Bluefield, Virginia, with a load of bottled soft drinks. During the day he had delivered cases of the soft drinks to various retail establishments and in return had picked up cases of empty bottles. Not being able to sell all of the full bottles, he was carrying on his return trip to the plant at Bluefield a half load of cases of such bottles and a half load of cases of empty bottles. The truck and its load weighed approximately six and one-half tons.

Dunford said that as he approached Cedar Bluff, he changed his gears from the fourth to the third, and was traveling between twenty and twenty-three miles an hour or possibly twenty; that there was a "moderate" rain, the roadway was wet, it was "getting a little dusky," and he had put his parking lights on; and that as he emerged from the rock cut and continued on the curve of the road, he could plainly see anything one hundred and fifty to two hundred feet on the highway in front of him; that suddenly he saw a car upon the highway when he was, "perhaps, six or ten, maybe twelve, feet distant" from it; that he applied his brakes and swerved to the left, but nevertheless struck the other car which had gotten approximately six feet on the highway; and that he stopped his truck, got out, saw Mr. Lambert lying by its side, and went immediately into the market building, where he called for an ambulance, the State Police, and a wrecking car.

After the collision, the truck came to a stop on the hard surface of the highway, still headed east, in the eastbound traffic lane, except for the left front wheel which was about two feet across the left of the center white line of the highway, about thirty-six feet from the point of impact.

Skid marks extended eighteen feet back from its rear wheels. Lambert's automobile came to a stop with its front headed easterly and in a position about even with the front end of the truck. It was entirely off the hard surface of the highway along its southern edge, with the exception of its left rear wheel, which was slightly on the edge of the hard surface. The front end of the truck was damaged, and the passenger automobile showed evidence of being struck against its left front fender, and the left side of its hood forward of the windshield.

L. W. Collins, a State Highway patrolman, arrived at the scene of the accident about 7:00 p. m. He found the vehicles in the position which they occupied immediately after the collision. He testified, from notes and measurements there made, that dirt and mud in the road knocked off the two vehicles indicated the point of impact was in the eastbound traffic lane of the highway five feet from the southern edge of the hard surface. He found no dug out or dented place in the surface of the highway.

Dan C. Taylor who was not present at the time of the accident, or at the time of the investigation by Trooper Collins, said that, in June, 1953, more than one year after the accident, Ernest Sergant had pointed out to him a scarred or cut place in the highway near the center of the road, which he, Sergant, thought was the point where the collision occurred. Ernest Sergant, however, in his testimony, said he fixed the point of impact at the place where dirt and debris from the vehicles were found on the highway.

Thus, if the point of collision was five feet from the southern edge of the hard surface, only the front half of the Lambert car had gotten into the eastbound traffic lane when the collision occurred. Assuming that it had been stopped one foot from the edge of the hard surface, it had moved approximately six feet after the plaintiff said he looked out on the highway.

Plaintiff contends that the accident was caused solely by

reason of the excessive and unlawful rate of speed of the truck. He insists that his contention is supported by the evidence and the physical facts attending the collision. Defendant, on the other hand, denies any negligence on the part of its agent, and says that the evidence of the plaintiff shows, as a matter of law, that he was guilty of negligence which constituted the proximate cause of the collision.

■ Questions of negligence, contributory negligence and proximate cause are generally for the jury. Since we are of opinion that the plaintiff was guilty of contributory negligence, it is unnecessary for us to discuss the question of the negligence of the defendant. Contributory negligence on the part of a person injured presupposes negligence upon the part of a person causing the injury. *Va. Elec. & P. Co.* v. *Wright*, 170 Va. 442, 446, 196 S. E. 580; *Yeary* v. *Holbrook*, 171 Va. 266, 268, 198 S. E. 441; *Andrews* v. *C. & O. Railway Co.*, 184 Va. 951, 956, 37 S. E. (2d) 29.

We have no doctrine of comparative negligence in Virginia in cases like this. *Penoso* v. *D. Pender Grocery Co.*, 177 Va. 245, 249, 13 S. E. (2d) 310; *Perdue* v. *Patrick*, 182 Va. 398, 408, 29 S. E. (2d) 371.

Whether a negligence case should be submitted to a jury or determined by a court must always turn on the facts of the particular case. Where the facts are such that reasonable men could draw no other inference or conclusion from them than that the plaintiff was, or was not, in default, then it is the province of the court to determine the question of his contributory negligence as a matter of law. In other words, where reasonable men can draw but one inference from the facts, negligence becomes a question of law. *Penoso* v. *D. Pender Grocery Co.*, *supra*; *Perdue* v. *Patrick*, *supra*; *Steele* v. *Crocker*, 191 Va. 873, 880, 62 S. E. (2d) 850; *Leo Butler Co.* v. *Wilbun*, 192 Va. 263, 268, 64 S. E. (2d) 738; 13 M. J., Negligence, sections 64 and 65, pages 593, *et seq.*

■ This brings us to a consideration of the rights and

duties of the plaintiff as he approached the point of the accident.

Virginia Code, 1950, § 46-255*, in effect at the time of the accident provides that: "All vehicles when entering a highway, which is improved and hard surfaced and is a part of the State Highway System, from the side thereof, shall, immediately before entering such highway, stop."

One of the most fatal omissions in automobile travel is the failure of the driver of a vehicle to keep a reasonable lookout for other objects and persons on the highway. One of the purposes of the above statute is to provide that the vehicle shall not be driven into the highway until its driver has taken advantage of the stop to exercise reasonable care in looking along the highway for approaching traffic.

The principles which apply to the facts of this case have been stated by us a number of times in recent cases where factual situations were closely similar to the facts and circumstances here. *Brown v. Lee,* 167 Va. 284, 189 S. E. 339; *Yellow Cab Co. v. Gulley,* 169 Va. 611, 194 S. E. 683; *Otey v. Blessing,* 170 Va. 542, 197 S. E. 409; *Ellett v. Carpenter,* 173 Va. 191, 3 S. E. (2d) 370; *Moore v. Vick,* 181 Va. 157, 24 S. E. (2d) 429.

The maps and evidence in this case clearly show that while the point where plaintiff entered the highway is on the inside of a broad curve, he had there an unobstructed view for one hundred and fifty feet to the west.

Baylor Sergant observed defendant's truck one hundred to one hundred and fifty feet distant on the highway when he was standing at a place where a view of the approaching truck was less open to him than to a person at the point where plaintiff stopped his car before entering the highway. The explanation of plaintiff that the truck was "flying" is hardly to be accepted as credible. Its highest rate of speed was estimated to be forty miles an hour, and admittedly

---

* This statute was amended by Acts of 1954, chapter 137; but the amendment is not material here.

that was a guess. Moreover, it is not credible that the speed of the truck was such as to make it invisible to a person keeping a lookout, regardless of its rate of travel. Having shown by his own witness, Baylor Sergant, that the truck was approaching in plain view, plaintiff should not then be heard to say that he looked and did not see it, or that it could not be seen.

Assuming that plaintiff's automobile moved across the road at the rate of three miles an hour, and that the truck was traveling forty miles per hour, or thirteen and one-third times as fast as the passenger car, then the automobile traveled six feet, while the truck would have traveled thirteen and one-third times as far, or eighty feet, and had been, therefore, within plain view seventy feet when plaintiff left his place of safety at the side of the highway and entered upon the road. It does not require many seconds for an automobile to travel one hundred feet running at a speed of either twenty or forty miles per hour.

"When a situation is open and obvious, one will not be heard to say that he looked but did not see." *Russell* v. *Kelly*, 180 Va. 304, 309, 23 S. E. (2d) 124.

In *Brown* v. *Lee, supra*, the plaintiff, Lee, was driving a truck in an easterly direction on a paved highway. Brown, the defendant, was driving a coupe in a southerly direction on a dirt highway. Each was approaching an intersection. The driver of the truck had a clear view, and could have seen the approaching coupe for a distance of seventy-five feet before the coupe reached the intersection. Lee testified that he did not see the coupe until the collision occurred and gave no explanation why he did not see it. Nevertheless, Lee obtained a judgment in the trial court. On appeal we reversed, holding that the contributory negligence of Lee was too plain for argument.

Here, Fred O. Lambert could have seen the Nehi truck for a distance of one hundred and fifty feet before it reached the point of collision if he had effectively looked. Moreover, Lambert was driving upon the highway from an

open side of the road rather than at an intersection, and as between them the truck had the right of way.

In *Moore* v. *Vick, supra,* the plaintiff, Moore, was driving his car in an easterly direction on a highway approaching an intersection with another highway. The defendant, Vick, was driving her automobile in a southerly direction approaching the same intersection. There were stop signs on Mrs. Vick's route requiring traffic to stop before entering the intersection. Mrs. Vick said that when she reached the intersection she brought her car to a full stop; that she looked to her right and left for approaching traffic; that she could see to her right for a distance of one hundred and twenty-five to one hundred and fifty yards and saw no car approaching; and that she proceeded into the intersection and was struck by the Moore car before she cleared it. Upon appeal we held that the plaintiff could not recover because he was driving at an excessive speed, and that the defendant was guilty of contributory negligence in not observing the approaching car.

In the present case, the conclusion is irresistible that the Nehi truck was much nearer to Lambert when he started into the highway and much easier to be seen than was the Moore car which struck Mrs. Vick. The facts and circumstances here show that Lambert drove upon the highway almost immediately in front of the approaching truck when he could not have failed to have seen it if he had maintained a proper lookout.

Plaintiff either failed to look when looking would have been effective, or he failed to heed when he saw or should have seen. It may be that after stopping and looking he failed to proceed promptly on the highway. Since he said he continued to look to his left as he continued across the highway, it is inconceivable how he failed to see the approaching truck at any time prior to the collision. Incredible as it may be, plaintiff and his son testified that neither of them saw the truck before their car was struck, and for this neither offers a credible explanation. There is

nothing in the physical facts, relating either to the position of the two vehicles upon the highway before and after the accident, their point of impact or their damaged condition, which indicates that the speed of the truck was the sole cause of the accident. The action of the plaintiff in entering upon the highway without observing the oncoming truck, when it was manifestly visible to any person capable of sight, constituted plainly approximate cause of the collision.

In *Perry* v. *Thompson*, 196 Va. 817, this day decided, we quoted with approval the following statement:

"The driver of a car who keeps a lookout and fails to take advantage of what it discloses is as guilty of negligence as one who fails to keep a lookout. The result is usually the same." *Yellow Cab Co.* v. *Eden*, 178 Va. 325, 341, 16 S. E. (2d) 625, 631.

The facts in the cases relied on by plaintiff may be readily distinguished from those in the case under review.

A consideration of the evidence leads us to the conclusion that the plaintiff was clearly guilty of contributory negligence, established by the testimony of himself and Baylor Sergant. In leaving a place of safety and entering upon the highway at the time and in the manner shown, Fred O. Lambert was the author of his own misfortune. The trial court erred in refusing to overrule the motion of the defendant to strike the evidence of the plaintiff.

For the reasons stated, the judgment of the trial court will be reversed and a final judgment will be entered in this court for the Nehi Bottling Company, Incorporated.

*Reversed and final judgment.*