# Staunton

JOHN A. BROWN, JR. v. BASCOM DAMRON.

September 14, 1955.

Record No. 4408.

Present, All the Justices.

The opinion states the case.

*Robert B. Davis*, for the plaintiff in error.

*Francis W. Flannagan*, for the defendant in error.

Hudgins, C. J., delivered the opinion of the court.

This writ of error brings under review the record in the trial of a tort action wherein Bascom Damron obtained a verdict and judgment for $12,500.00 for personal injuries received in a collision between an automobile operated by him and a tractor-trailer truck operated by J. A. Brown, Jr.

The parties will be designated as plaintiff and defendant according to the positions they occupied in the lower court.

Defendant attacks the judgment on two grounds: (1) Lack of proof of defendant's negligence; and (2) Conclusive proof of plaintiff's contributory negligence.

The accident occurred on a dry, clear, moonlight night at approximately eleven p. m., September 21, 1953, on U. S. Highway No. 11 between Bristol and Abingdon. The highway is practically level, sloping slightly to the west; its hard surface (black top) is 30 feet wide, divided into three traffic lanes, each 10 feet wide. At the scene of the accident broken white lines between the west bound and center lanes indicate that west bound traffic may pass; two solid white lines between the center lane and the east bound lane indicate that east bound traffic must not use the center lane in passing or otherwise, because vehicles approaching from the east are hidden from sight by a dip in the road several hundred feet to the east. A bank four to five feet high extends almost to the edge of the hard surface on the south side of the highway. To the east of this bank is a wide hard surface entrance to Evergreen Tourist Court. On the north side of the highway there are the Robert E. Lee Motel and a filling station. A hard top apron 10 feet wide and 165 feet long, adjacent to the highway, connects the filling station with the motel and is used by both as an entrance and a parking area. Immediately in front of the filling station and the motel the hard top is wider and extends to the edge of the highway.

Plaintiff, a few minutes before eleven p. m., in his 1948 Buick automobile, stopped momentarily in front of the office of the Robert E. Lee Motel. Before William R. Hurley, the manager, who saw plaintiff as he drove up, could get to the automobile to ascertain plaintiff's desires, plaintiff turned back to the highway and, with his headlights burning, stopped 10 feet to 15 feet from the northern edge, where he remained three or four minutes. Hurley,

who was standing within a few feet of the Buick, saw the lights of a truck, later ascertained to be defendant's 1953 White tractor-trailer truck, traveling west between forty and forty-five miles an hour, come in sight over the crest of the hill. When 200 to 300 feet from the scene, the horn on the truck was sounded. Immediately thereafter, plaintiff "eased" out into the highway and, traveling not more than five miles an hour, crossed the west bound traffic lane, and was struck on the left side of his car as he crossed from the center lane into the east bound lane. The Buick was knocked up and over the dirt bank 50 feet to 66 feet. When the vehicles came to rest the Buick was lying on its top entirely off the highway and 20 feet from the southern edge of the east bound traffic lane. Defendant's truck continued after the impact, struck the dirt bank and stopped, with approximately one-fourth of its forty-five feet length in the east bound traffic lane and the other three-fourths off the highway and south of its southern edge.

Defendant was not injured. His truck was badly damaged. Plaintiff was knocked unconscious and sustained painful, severe and permanent injuries.

■ The evidence tending to establish defendant's negligence may be summarized as follows: The tractor-trailer truck was 45 feet long and loaded with 19 head of small cattle weighing "about 12,000 lbs.". They occupied about one-half of the trailer space. They were not confined by bars or otherwise to prevent them from shifting forward or backward or from side to side. Defendant said that he knew cattle so loaded might, and probably would, on a sudden application of the brakes shift and cause the truck to get out of control, swerve, jack-knife, or turn over. When he came out of the dip over the crest of the hill, traveling at 45 miles an hour, he saw plaintiff's car approximately 300 feet ahead standing still, its lights on, facing the highway, within a few feet of its northern edge. He immediately blew his horn, after which plaintiff started across the highway. Defendant grabbed the steering wheel with both hands, "mashed on my brakes hard to try to stop. . . . The load shifted to the front. The livestock just run loose in the trailer and made the truck swerve to the left a little . . . . The cattle were shifting the trailer around. They made the trailer swerve. It probably jack-knifed a slight bit over that way (to the left). I eased up on the brakes a little bit to straighten back. It appeared that he (plaintiff) was going to stop. He was just creeping. Any-

way it appeared he was going to stop." Defendant then said: "I reapplied my brakes real hard. I cut to the left to try to miss him because he was in my lane in the road. He was directly ahead of me in my lane so I cut to the left to miss him . . . . It seemed about the time I cut left he must have given it a burst of speed . . .". Defendant testified on cross-examination that if he had not made the left turn, probably the motor vehicles would not have collided.

Defendant admitted that the skid marks, as to which W. E. Richardson, State trooper, testified, were made by his truck and that his measurements were correct. These marks began opposite the filling station 1.8 feet inside the center lane, swerved left, then right, down the dividing line between the west-bound and center traffic lanes for 123 feet, then turned left at approximately a 45° angle in a southwest direction, across the center lane into the east bound lane, 116 feet to the point where the truck came to rest. The over-all length of the skid marks was 239 feet, a very slight part of which was made by dual tires, the other part by a single tire.

Under normal circumstances, the maximum speed limit for trucks on the highway at the scene is 45 miles per hour. Code § 46-212(3). However, this is not the speed at which they are authorized to operate under any and all circumstances. Code § 46-209(7) declares it to be reckless driving to exceed a reasonable speed limit under circumstances and traffic conditions existing at the time.

Eyewitnesses testified that defendant was not exceeding 45 miles an hour when he came over the crest of the hill. Defendant admitted that he knew that if he had to make or made a quick stop his load would shift and very probably get the truck out of control. Indeed, he said that is what happened. When he applied his brakes the load shifted causing the truck to swerve from side to side, start to jack-knife and, in order to keep from turning over, he had to ease up on his brakes. Hence, through his own fault he was not in a position with safety to himself to obtain the maximum efficiency of his brakes, even had they been in proper working order. The jury might well have found from the manner in which the cattle were loaded, the length and kind of skid marks, the point in the highway, and the force of the impact that defendant was negligent. See *Interstate Veneer Co.* v. *Edwards*, 191 Va. 107, 60 S. E. (2d) 4, 23 A. L. R. (2d) 532; *Fletcher, Adm'r* v. *Horn, etc.* 197 Va. 317, 89 S. E. (2d) 89, opinion announced this session of the Court.

Plaintiff argues that the question of his contributory neg-

ligence was properly submitted to the jury and that the court is bound by the jury's verdict finding him free of negligence. This principle is applicable where there is a conflict in testimony on the issue, or where fair minded persons may draw different conclusions from the uncontradicted testimony. On the other hand, where fair minded persons can draw but one inference from the facts, the question of contributory negligence is a question of law.

Mr. Justice Spratley, in *Nehi Bottling Company* v. *Lambert*, 196 Va. 949, at 955, 86 S. E. (2d) 156, summarized the principles thus: "Whether a negligence case should be submitted to a jury or determined by a court must always turn on the facts of the particular case. Where the facts are such that reasonable men could draw no other inference or conclusion from them than that the plaintiff was . . . in default, then it is the province of the court to determine the question of his contributory negligence as a matter of law. In other words, where reasonable men can draw but one inference from the facts, negligence becomes a question of law." (Citing numerous authorities).

■ The common law imposed upon plaintiff the duty to exercise reasonable care for his own safety. Code § 46-240 imposed upon him a statutory duty in this language: "The driver of a vehicle entering a public highway from a private road or driveway shall, immediately before entering such highway, stop and, upon entering such highway, shall yield the right of way to all vehicles approaching on such public highway."

We have held in numerous cases that this statute must be given a reasonable construction. When a driver on a private road approaches an intersection, stops and looks in both directions for approaching traffic on a public highway, acting as a reasonably prudent person, exercising due care, he is not negligent as a matter of law if he attempts to enter the intersection under the reasonable belief that he has time enough to cross safely. *Temple* v. *Ellington*, 177 Va. 134, 12 S. E. (2d) 826, *Umberger* v. *Koop*, 194 Va. 123, 72 S. E. (2d) 370, and cases therein cited.

There is no substantial conflict in the evidence as to plaintiff's actions. He complied with the first part of the statute by stopping 10 feet to 15 feet from the northern edge of the highway. Why he stopped three or four minutes when no motor vehicle was in sight is not explained. Before he started his car, defendant came into plain view over the crest of the hill to the east and saw plaintiff's car standing still, the lights burning, facing the highway.

If defendant could see plaintiff's car, plaintiff had an equal opportunity to see defendant's truck. Its headlights were on high beam. There were five marker lights across the front of the cab, a light on the running board of the tractor, and a light on each side. William R. Hurley standing on the ground a few feet from plaintiff saw the lights of the truck approaching. If plaintiff did not see the lights of the approaching truck, he was guilty of negligence in failing to keep a proper lookout. It was not only the duty of plaintiff to see the approaching truck, but to take such steps as were reasonably necessary to avoid a collision of the motor vehicles. It was also the duty of plaintiff to yield defendant the right of way.

Unfortunately, we do not have the benefit of plaintiff's testimony on this issue. He was unconscious when he was taken out of his wrecked car and remained so until sometime during the second week following, when he regained consciousness in the hospital. He did not remember any of the incidents occurring in the early evening or night of the accident. However, we must decide the case on the assumption that plaintiff looked and saw the lights of defendant's approaching truck and, notwithstanding, decided to enter and cross the highway. This narrows the question to whether the mythical, "reasonably prudent person", in the exercise of due care, would have so acted.

Before plaintiff moved from his parked position, he heard or should have heard the warning blast or blasts of defendant's horn, sounded a little less than 300 feet to his left. He knew or should have known that defendant was approaching at approximately 45 miles an hour and ordinarily would have reached a point in the highway 10 to 15 feet in front of him in a few seconds (3 to 5 seconds). He knew or should have known that it would take him, with his car in motion traveling at 5 miles an hour, about the same time to travel the 10 to 15 feet to the highway and the 20 feet across the west bound traffic lanes in order to enter and cross a sufficient part of the highway to be out of danger of the rapidly approaching truck. This timing is not exact, nor is it meant to be so. It does not take into consideration defendant's reduced speed caused by the application of his brakes, or the fact that plaintiff's car was not in motion at the time he started from a parked position. However, these two factors tend to offset each other.

The safety of the many persons and of the great amount of property on the main highways of the Commonwealth is too important to be jeopardized by split second timing of persons heed-

lessly entering the same from side roads or private driveways, or for large trailer trucks to be so loaded or operated on the highway that they are likely to jack-knife or get out of control on application of the brakes. When both of these acts of negligence concur to cause an accident, neither party should be allowed to recover compensation for the injuries inflicted.

It was not only the duty of plaintiff to see the lights of defendant's truck before he entered the highway, but to take reasonable care to avoid colliding with it. It does not appear from the evidence that plaintiff saw defendant's truck or took any action for his own safety. Not infrequently a slow driver is as much of a menace to safety of other users of the highway as a fast driver. If plaintiff had stopped momentarily (not three or four minutes) and immediately attempted to cross the highway at a reasonable speed, for instance 10 to 15 miles an hour, he doubtless would have made the crossing in safety; but starting from a stopped position 10 to 15 feet from the edge, and traveling at 5 miles an hour or less, under the circumstances, was negligence and a contributing cause of the accident.

Plaintiff contends that he was in the proper lane, that is the east bound lane, and that since the point of impact was entirely within this lane, he is not guilty of contributory negligence. This contention is not supported by the evidence. It is true that the uncontradicted testimony places the point of impact in the east bound traffic lane 1.6 inches from the southern boundary of the center lane. There is no evidence which shows whether plaintiff was crossing the highway to enter the driveway to Evergreen Tourist Court, or whether he intended to turn left towards Abingdon; at least, he had not made the turn at the time of the collision. The front of the truck struck the left door of the Buick automobile. This and the point of impact indicate that it was partly in the east bound lane and partly in the center west bound lane at the moment of impact.

Hurley, who was watching the two vehicles, the only vehicles in sight, was asked "At that point when he (defendant) started turning to his left, what did Mr. Damron do?" "Looking back and forth, the car was just easing. I don't think it ever picked up any speed or anything—just come on across. I watched him until they were about 10 to 15 feet apart and then I turned around."

The testimony of defendant is that plaintiff was moving so

slowly that he thought he was going to stop and, after he made a left turn in order to avoid the collision, plaintiff increased his speed.

It is immaterial whether we accept Hurley's testimony or that of defendant. From either version, it conclusively appears that plaintiff was negligent in entering and attempting to cross the highway at such a slow rate of speed, immediately in front of a rapidly approaching truck.

Plaintiff cites a number of cases in which this Court held that contributory negligence was a question for the jury. Defendant cites a number of cases in which this Court held that the question of such negligence was a question of law to be decided by the court. Many of the same authorities are cited in *Tellis* v. *Traynham*, 195 Va. 447, 78 S. E. (2d) 581, and *Nehi Bottling Co.* v. *Lambert*, *supra*. All the authorities cited hold that whether negligence is a question for the jury or one of law to be decided by the court depends upon the facts in each case. A comparison of the facts in the different cases cited would needlessly prolong this opinion and serve no useful purpose, as this may be done by reading the cases. Our conclusion from the facts in this case is that the contributory negligence of plaintiff was a proximate cause of his own mishap.

For the reasons stated, the judgment of the trial court is reversed, the verdict of the jury set aside, and final judgment rendered for defendant.

*Reversed and final judgment.*