# Richmond

## Hilary Newman, Et Al., Etc. v. Roscoe Dalton.

April 26, 1965.

Record No. 5944.

Present, Buchanan, Snead, l'Anson, Carrico and Gordon, JJ.

*George P. Young (Raleigh M. Cooley,* on brief), for the plaintiffs in error.

*J. L. Tompkins,* for the defendant in error.

Gordon, J., delivered the opinion of the court.

[1] The crucial question presented, in this action for damages arising out of an automobile collision at a highway intersection, is whether

Dalton (the plaintiff) was guilty, as a matter of law, of contributory negligence that proximately contributed to cause the accident. In view of the jury verdict in Dalton's favor, the evidence will be stated in the light most favorable to him.

The collision happened on October 26, 1962 at about 12:35 P.M., when visibility was good and roads dry, at the intersection of secondary Route 672 and primary Route 221, northeast of Hillsville in Carroll County. Immediately before the accident, Dalton was driving his pickup truck north on Route 672, and Melton (the driver of the defendants' dump truck) was driving east on Route 221. Dalton, faced with a "Stop" sign at the intersection of Route 672 and Route 221, came to a stop about three or four feet from the southern edge of the hard surface of Route 221. From that point, he had clear visibility to the west and along Route 221 for a distance of approximately 875 feet, to a point where Route 221 curved to the right (looking west). Neither he nor his wife (who was a passenger in his pickup truck) saw any traffic headed east on Route 221. Dalton then looked to the right and, finding it clear also, changed from second into first gear and proceeded into the intersection, intending to cross Route 221 and continue northwardly on Route 672 to his home. When the front of Dalton's truck had reached a point in the intersection, about three or four feet north of the southern edge of the hard surface of Route 221, Dalton and his wife looked again to the left (west) and saw the defendants' dump truck at or approaching the far (western) end of a bridge on Route 221 over Big Reed Island Creek. The western end of the bridge was shown to be 468 feet from the intersection. Dalton did not accelerate his vehicle or again look to his left or see the defendants' truck before the collision, but proceeded across the intersection at a low rate of speed. Dalton testified that his speed was two miles an hour or "something like that I guess. I never looked to see what miles it was". The driver of the defendants' truck estimated Dalton's speed at five miles per hour.

After Dalton had cleared the southern lane of travel on Route 221 (that is, the right-hand lane when headed east, the direction in which the defendants' truck was proceeding on Route 221), the right front end of the defendants' truck (which the driver had turned to the left, in the attempt to pass in front of Dalton) struck Dalton's truck at its left rear fender. At the time of the collision, the front wheels of Dalton's truck had cleared the northern edge of Route 221 and were on the graveled surface of Route 672 to the north. According to the evidence of the trooper who investigated the accident, the impact oc-

curred at a point three feet seven inches from the northern edge of Route 221, and the extreme rear of Dalton's truck was approximately three feet nearer the center line. Since Route 221 is twenty-one feet wide, divided into two lanes of ten and a half feet each (with a center line), the rear of Dalton's truck at the time of the collision was (according to the trooper's testimony) approximately three feet eleven inches north of the center of Route 221—entirely clear of the southern lane of travel on Route 221 (the right-hand lane, when headed east).

The trooper found a mark, two feet six inches wide, which he identified as having been made by Dalton's truck as it was knocked "sideways" after the collision. His truck spun around, went off the highway over an embankment and struck a tree seventy-two feet from the point of collision. The defendants' truck continued on Route 221 approximately seventeen and a third feet before stopping; the driver testified that he did not apply the brakes after the collision until the truck was off the road. No tire or skid marks made by the defendants' truck were found; according to the evidence, a loaded truck without air brakes (the defendants' truck was loaded with stone and had mechanical brakes) will not usually leave such marks.

Dalton testified that he habitually crossed Route 221 in low gear. He referred to the loose gravel "up to the hard top of the road there" and to the fact that he had "mashed the three year old baby's mouth there" sometime ago when his truck "hit down on that gravel".

As might be expected, the defendants' evidence affords a different version of the accident and its cause. Melton, the driver of the defendants' truck, testified that Dalton's truck was eight or ten feet from the intersection, when Melton's truck was at the east end of the bridge, only 210 feet from the intersection; that, as Melton proceeded off the east end of the bridge at about 45 miles per hour, he blew his horn, slackened his speed (because his route was uphill) and put his foot on the brake pedal (without applying the brakes), when Dalton was about four feet from the southern edge of Route 221; that when Melton was seventy-five or one hundred feet from the intersection, and the front of Dalton's truck was three or four feet on the hard surface of Route 221, Melton saw that Dalton "wasn't going to stop", and Melton applied his brakes and turned to his left, intending to pass in front of Dalton; and that Melton believed that Dalton's truck was about on the center line of Route 221 when

the collision occurred. There is conflict in the evidence whether Melton blew his horn, in that Dalton and his wife testified they heard no horn-blowing or other noise, and, as already indicated, direct conflict in the testimony as to other matters.

The contention that Dalton was guilty of contributory negligence as a matter of law is based essentially upon his alleged failure to keep a proper lookout and to drive his truck at a proper speed across the intersection. To resolve the question we must consider whether the theoretical reasonable man could have proceeded, as Dalton proceeded, into and across the intersection, accepting Dalton's version insofar as his version is not incredible. If reasonable men can differ whether Dalton acted as a reasonable man, or whether his negligence (if any) proximately caused or efficiently contributed to cause the accident, the issue was properly submitted to the jury, and resolved in Dalton's favor. (The court's instructions to the jury were not objected to by either side.)

We cannot hold as a matter of law that Dalton was guilty of contributory negligence in entering the intersection. He testified that before entering the intersection, he had observed the mandate of the "Stop" sign, had looked to his left and right, and had observed no traffic on Route 221 from either direction. The jury was justified in concluding that Dalton had observed the duties to stop and maintain a proper outlook, and that he was not guilty of negligence in entering the intersection. (See *Brown* v. *Damron*, 197 Va. 309, 313, 89 S.E.2d 54, 57, particularly the language from the opinion in that case quoted in the next paragraph.) The question is then narrowed to whether a reasonable man, observing a vehicle approaching from the left, some 468 feet away, when this reasonable man was three or four feet into the intersection, could have concluded that he could pass, while moving at a slow rate of speed, in front of that vehicle, across the highway twenty-one feet wide, with a lane ten and a half feet wide for traffic on Route 221 headed east. Perhaps if Dalton had looked again to his left, he would have been prompted to accelerate his speed, and his entire vehicle (instead of the front end) might have cleared the intersection ahead of the defendants' oncoming truck. But Dalton may reasonably have feared loss of control of the vehicle, if he accelerated his speed; he referred to the loose gravel on the highway and a previous mishap when he "hit down on that gravel". Under the circumstances, we cannot conclude as a matter of law that Dalton was unreasonable in believing that he could clear the path of the oncoming vehicle, particularly in view of the fact

he had cleared the eastbound lane of travel on Route 221 before the collision. The jury could have reasonably concluded that if Melton had continued in his proper lane of travel, instead of turning to the left, he would have passed to the rear of Dalton's truck. Accordingly, we must find that the issues were properly submitted to the jury whether Dalton was guilty of negligence that proximately contributed to cause the collision, or whether Melton was guilty of negligence that was the sole proximate cause of the collision.

A contrary finding was made in *Brown* v. *Damron*, 197 Va. 309, 89 S.E.2d 54, *supra*, where a collision happened under somewhat similar facts and circumstances. The differences in the facts and circumstances, however, distinguish that case from the case at bar. Damron (the plaintiff in *Brown* v. *Damron*) stopped ten or fifteen feet from the northern edge of the highway and, before he began his forward movement south and into the highway, Brown's truck (headed west on the highway) was 200-300 feet to Damron's left, clearly visible to Damron, and Brown had sounded his horn. Then, Damron proceeded into the highway at approximately five miles per hour, intending to cross or turn left on the highway. Damron's automobile was partly in the center lane and partly in the far or eastbound lane of the three-lane highway, when he was struck by the front of Brown's truck, which had swerved to the left. As we pointed out in that case, "When a driver on a private road approaches an intersection, stops and looks in both directions for approaching traffic on a public highway, acting as a reasonably prudent person, exercising due care, he is not negligent as a matter of law if he attempts to enter the intersection under the reasonable belief that he has time enough to cross safely." See 197 Va. 309, 313, 89 S.E.2d 54, 57. But under the facts and circumstances of that case, we held as a matter of law that Damron's contributory negligence in entering and proceeding across the highway was a proximate cause of the accident; when he entered the highway, a reasonable man could not have believed that he had time enough to cross safely at a slow speed. In the case at bar, the evidence supports a finding that Dalton was already on the highway when the defendant was about 468 feet from the intersection. Dalton then had the choice of stopping on the highway, or of continuing across at the same speed or at a faster speed. It was the province of the jury to determine whether Dalton adopted a reasonable course of action in proceeding across the highway at the same rate of speed, instead of stopping or accelerating. The jury may well have concluded, from the evidence in this case, that to

stop would have caused a blocking of the lane of oncoming traffic, and to accelerate would have caused loss of control of the vehicle because of gravel on the highway.

Other cases relied upon by the defendant in this case—*Garrison* v. *Burns,* 178 Va. 1, 16 S.E.2d 306, *Von Roy* v. *Whitescarver,* 197 Va. 384, 89 S.E.2d 346, *Bottling Co.* v. *Lambert,* 196 Va. 949, 86 S.E.2d 156, *Nicholson* v. *Garland,* 156 Va. 745, 158 S.E.901, *Yellow Cab Co.* v. *Gulley,* 169 Va. 611, 194 S.E.683, *Johnson* v. *Harrison,* 161 Va. 804, 172 S.E.259, and *Otey* v. *Blessing,* 170 Va. 542, 197 S.E.409 —are also distinguishable from the case at bar because of the different facts and circumstances involved in those cases. In both *Garrison* v. *Burns* and *Von Roy* v. *Whitescarver,* the drivers, who were found guilty of negligence as a matter of law, were in the act of turning to the left in front of the oncoming vehicle with which they collided. The driver in *Garrison* v. *Burns,* having seen the other car approaching from his left, before entering the intersection, entered the intersection and attempted to turn left, without giving the proper signal, and he was struck by the other car at about the center of the highway. The driver in *Von Roy* v. *Whitescarver* did not see the approaching automobile, which was in full view, when he started his turn to the left in front of that automobile. In *Bottling Co.* v. *Lambert,* Lambert, who drove from a parking area onto a highway, never saw the defendant approaching from his left, although his view was unobstructed for 150 feet, before his automobile was struck in the proper lane of travel for the oncoming vehicle. In *Nicholson* v. *Garland,* also, the plaintiff was guilty of contributory negligence as a matter of law in failing to look to his left before entering the intersection. In *Yellow Cab Co.* v. *Gulley,* the driver of the Gulley automobile entered the lane of the oncoming traffic from his right, instead of stopping, even though he testified that he had observed a car approaching from his right at a high rate of speed. In *Johnson* v. *Harrison,* Johnson entered the intersection when Harrison was approaching the intersection on Johnson's left, only forty feet away, at a speed of at least fifty miles per hour. Johnson had looked to his left when he was one-tenth of a mile from the intersection, and he failed to look to his left again to see whether traffic was approaching from that direction. *Otey* v. *Blessing* is relied upon by the defendant in this case for this proposition: One who is on a main highway approaching a crossing, may take it for granted that another, who was approaching the crossing on a secondary road and was faced with a "Stop" sign, had stopped with the intention of giving arterial traffic the right of way. There,

however, Otey drove into the intersection when the approaching car on his left was only eighteen or twenty steps away and in plain view.

We do not find the plaintiff's version of the accident in this case incredible. Defendants' counsel contends that the accident could not have happened where it did if the plaintiff's version be accepted, and plaintiff's counsel contends it could not have happened where it did if the defendants' version be accepted; and each attempts to sustain his position by applying the tables of speed and stopping distances to the speeds and distances testified to by the various witnesses. But, as we have said: "The fact that such estimates [of witnesses as to distances and speed] are not precisely correct does not render the testimony of either party incredible as a matter of law". See *Sink* v. *Masterson*, 191 Va. 618, 623, 61 S.E.2d 863, 865.

The remaining questions presented are whether, as contended by the defendants, the evidence fails to support a finding of primary negligence on the part of the defendants and the jury verdict of $40,000, sustained by the trial court, is excessive as a matter of law.

The evidence, as outlined, including the marks on the highway and the positions of the vehicles after the accident, clearly raised the issue whether the defendants' driver was negligent in failing to maintain proper control of his vehicle and whether his negligence proximately caused the accident; and we find no error in the submission of the issues to the jury.

[2] As to damages, the evidence supports findings that the plaintiff who was seventy years old on the date of the trial (December 5, 1963, about thirteen months after the accident), with no impairment or disease before the accident, sustained a complicated fracture of the head of the femur at the junction of the hip socket, a cerebral contusion, possibly a fractured skull, and lacerations of the forehead, and was unconscious for a substantial period after the accident, perhaps five or six weeks; that he could not walk without a walker and suffered pain, which interfered with his sleeping; and that his disability would be permanent.* We cannot say that the amount of the

---

* Defendants' counsel, in his brief, disputes these findings, insofar as they relate to the physical condition of the plaintiff before the accident and the permanency of the injuries caused by the accident. He points to a Doctor's report, introduced in evidence, which contains this statement: "He is apparently an arteriosclerotic, some cardiac involvement". But the Hospital report, also introduced in evidence, contains this information: [Question] "State any physical impairment or disease not the result of the accident?" [Answer] "There was none." The Hospital report contains this further information: [Question] "Has the patient made a complete recovery?" [Answer] "No." [Question] "If not, do you anticipate a complete recovery?"

verdict, over and above the hospital bills of approximately $4,140, for the plaintiff's pain and suffering and disability is so great as to shock the conscience of the court or create the impression that the jury was motivated by passion or had other improper motives or was prompted by misconceptions in fixing the amount of the damages. See *Edmiston* v. *Kupsenel*, 205 Va. 198, 135 S.E.2d 777.

Since we find no error in the judgment appealed from, it is

*Affirmed.*

BUCHANAN, J., concurs in result.

---

[Answer] "?" [Question] "If a complete recovery is not expected explain in detail." [Answer not given] [Question] "Nature and Extent of Disabilities". [Answer] "Total Disability".