## Richmond

JASPER GORDON IRVAN v. JAMISON OIL COMPANY, INCORPORATED.

March 9, 1964.

Record No. 5707.

Present, All the Justices.

*Robert J. Rogers* and *James M. Roe, Jr.* (*Stuart B. Carter; Woods Rogers, Muse & Walker; Carter & Roe*, on brief), for the plaintiff in error.

*C. E. Hunter* and *Charles D. Fox, III* (*Hunter, Fox & Fox*, on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

Jasper Gordon Irvan, hereinafter called the plaintiff, filed his motion for judgment in the court below against Jamison Oil Company, Incorporated, hereinafter called the defendant, to recover damages for personal injuries sustained in the collision of the automobile which he was driving and a tractor-trailer owned by the defendant and operated by its servant and employee, Walter E. Wolfe.

The defendant filed a general denial of the plaintiff's claim and a counterclaim for its property damage resulting from the collision.

At the trial, which was had before a jury, the lower court overruled the defendant's motion, made at the conclusion of all of the evidence, to strike the plaintiff's evidence. The jury rendered a verdict finding that the collision had been caused by the "negligence of both parties." Accepting this verdict, the court entered a judgment in favor of the defendant on the plaintiff's claim, and in favor of the plaintiff on the defendant's counterclaim. We granted the plaintiff a writ of error.

In his assignments of error the plaintiff contends that the lower court erred in refusing to set aside the verdict and in its rulings on the instructions. The defendant assigns cross-error to the denial of its motion to strike the plaintiff's evidence.

The collision occurred at about 11:00 a. m. on July 9, 1962, on U. S. Route 220, in Botetourt county, just north of its intersection with the driveway leading from the Irvan residence located west of the highway. The highway runs approximately north and south and is paved to a width of 20 feet and 5 inches. Wolfe, the driver of the defendant's tractor-trailer, was killed in the collision, and the plaintiff, Irvan, was the only witness who testified as to how it occurred.

According to Irvan's testimony, it was his intention to proceed along his driveway to the western side of the highway, drive across the highway, make a left turn, and go northwardly along the northbound lane. Before going onto the hard-surface he came to a full stop and looked in both directions. He saw no traffic approaching from the north, that is, on his left. To the south, that is, on his right, he saw a truck which appeared to him to be about one-half a mile away. Thinking that he had sufficient time to complete his intended turn ahead of the approaching truck, he pulled onto the hard-surface, made his left turn, and was headed north in his proper lane of travel when his motor stalled. After a lapse of from three, four or five seconds, he succeeded in starting his motor and was moving ahead when his car was struck in the rear by the defendant's tractor-trailer, which was likewise proceeding in a northwardly direction.

As a result of the collision, Irvan was injured, Wolfe, the driver of the tractor-trailer, was killed, both vehicles were demolished, and 6,400 gallons of gasoline on the tractor-trailer were lost.

A State trooper, who arrived on the scene shortly after the accident, testified that there were marks on the pavement in the northbound lane which indicated that the point of impact was 75 feet

north of the center line of the Irvan driveway. He found that the Irvan car had been carried 121 feet beyond the point of impact and had come to a stop in the ditch on the eastern side of the highway. The tractor-trailer had likewise come to a stop east of the eastern side of the pavement, 99 feet beyond the Irvan car.

According to the further testimony of the trooper, the road was straight and the view unobstructed for at least 420 feet south of the point of the impact, the direction from which the tractor-trailer had come. There was no evidence of skid marks on the pavement or other indication that the brakes had been applied on the tractor vehicle before reaching the point of impact.

There was evidence that the defendant's vehicle had been inspected a few days before the accident and that its brakes, steering mechanism, and other equipment had been found to be in good condition.

While the trooper saw the plaintiff at the scene of the accident, he did not take a statement from him at that time. Later, in the hospital, he talked with the plaintiff who told him that the accident had occurred substantially as the plaintiff testified.

Another witness came upon the scene shortly after the accident and when he inquired of the plaintiff as to how it occurred, the reply was, "I don't know."

In support of its contention that the lower court should have struck the plaintiff's evidence, the defendant argues that the plaintiff's testimony that the tractor-trailer was one-half a mile away when he, the plaintiff, entered the highway is incredible; that allowing for its ordinary speed the vehicle must have been much nearer. But conceding that the plaintiff was mistaken in his estimate of the distance that the vehicle was from him when he entered the highway, this would not necessarily absolve the defendant's driver of negligence. According to the undisputed testimony of the trooper, the driver of the defendant's vehicle had an unobstructed view of the plaintiff's car ahead of him on the highway for a distance of 420 feet, and the jury had the right to find that by the exercise of ordinary care he should have seen the car and avoided the collision.

On the other hand, the jury had the right to find that the plaintiff was mistaken in his estimate of the distance the tractor-trailer was from him when he drove onto the highway, and that, in the exercise of ordinary care, he should have observed that it was too close for him to have executed the left-hand turn ahead of it. In short, we think it was for the jury to say, under proper instructions, whether the defendant or the plaintiff was, or both were, guilty of negligence

which proximately caused the accident. Consequently, the lower court properly overruled the defendant's motion to strike.

Over the objection of the plaintiff the court granted Instruction "E". This instruction read: "The court instructs the jury that if a driver of a motor vehicle, through no fault of his own, is required to act in a sudden emergency, even if he acts unwisely, he is not guilty of negligence, since in case of a sudden and unexpected danger, necessitating an immediate decision as to which of two or more ways of escape will be resorted to, the law makes allowance for errors of judgment, even though it appears that the resulting accident could have been avoided if the party so placed in peril had pursued a different course."

We agree with the plaintiff that there is no evidence on which the jury could properly predicate a finding that the defendant's driver, "through no fault of his own," was "required to act in a sudden emergency." There is no evidence that just before the collision the defendant's driver was confronted with a sudden emergency, or, if so, what brought it about. Hence it was error to grant this instruction.

Over the like objection of the plaintiff, the court granted Instruction "F" which told the jury that if they find from the evidence that immediately prior to the accident the plaintiff was "driving in such a manner as not to have his car under proper control, then he was guilty of negligence."

Again, we find no evidence on which to base this instruction. The defendant insists that the instruction was proper because, it says, the plaintiff undertook to drive his car after the motor had stalled. It argues that, in this situation, the plaintiff should either have brought his car to a stop or turned off of the pavement onto the shoulder. But the fact that he did neither does not indicate that the plaintiff was "driving in such a manner as not to have his car under proper control." Indeed, the plaintiff testified that despite the momentary failure of the ignition, he had started the motor and had the car under control at the time of the collision.

Error is assigned to the granting of Instruction "C", the material portion of which told the jury that it was the duty of the plaintiff before entering the highway from his private driveway to stop immediately, and "upon entering said highway to yield the right of way to *all vehicles* approaching on said highway." (Emphasis added.) While the wording of the instruction is in accord with that of the statute (Code, § 46.1-223), we held in *Temple* v. *Ellington,*

177 Va. 134, 142, 12 S. E. 2d 826, 828, 829, that the section must be given a reasonable construction and that a driver entering a highway from a private road "is only required to yield the right of way to those lawfully approaching so near the intersection that he cannot safely enter it." At another trial of the present case a similar instruction, if granted, should be in conformity with that holding.

The plaintiff assigns error to the refusal of the lower court to grant Instructions Nos. 2, 3 and 5 requested by him. We find that each of these instructions was properly refused.

Instruction No. 2 would have told the jury that "it was the duty of the driver of the Jamison truck to operate the same at a careful and prudent rate of speed under the existing conditions." As the court pointed out, there was no evidence that the vehicle was being operated other than at a careful and prudent rate of speed.

Instruction No. 3 would have told the jury of the duty of the driver of a motor vehicle to "keep the same under proper control." Here there was no evidence of such lack of proper control.

Instruction No. 5 undertook to tell the jury of the duty of a driver in overtaking and passing another vehicle ahead proceeding in the same direction, as provided in Code, § 46.1-208. It was a finding instruction which would have told the jury that the failure of the defendant's driver to comply with the terms of the statute was negligence and required a verdict for the plaintiff, without predicating such conclusion upon the additional finding that the plaintiff was free of negligence.

For the error of the lower court in granting Instructions "E" and "F" the judgment is reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed and remanded.*