# Richmond

Kenneth Ray Canupp, Etc. v. Jack Fenton Wade.

March 8, 1965.

Record No. 5860.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

*Frank C. Maloney, III; Cary L. Branch; Richard W. Schaffer (J. Calvitt Clarke, Jr.; Allen, Allen, Allen & Allen; Sands, Anderson, Marks & Clarke,* on brief), for the plaintiff in error.

*G. Kenneth Miller* and *Thomas A. Williams (May, Garrett, Miller, Newman & Compton; Williams, Williams & Williams,* on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

■ Kenneth Ray Canupp, an infant, hereinafter referred to as plaintiff, instituted, by his father and next friend, this action against Jack Fenton Wade, hereinafter referred to as defendant, to recover damages for personal injuries received by the plaintiff when an automobile operated by him was in collision with an automobile operated by Wade. The defendant denied any liability and filed a counter-claim for personal injuries received by him in the collision. The case came on to be heard before a jury. At the conclusion of all the evidence, the court struck the evidence of each party and entered judgment for the defendant on the plaintiff's claim, and for the plaintiff on defendant's counter-claim, on the ground that the evidence was insufficient to sustain a verdict on either claim.

Each party excepted. The plaintiff gave notice of appeal and assigned error to the action of the court in striking his evidence and entering judgment for the defendant. The defendant also gave notice of appeal and assigned cross-error to the striking of his evidence on the counter-claim and the entering of judgment for the plaintiff. Each duly designated parts of the record for printing. Upon petition of plaintiff, we granted this writ of error.

Briefs have been filed by each party, in which they rely upon their respective assignments of error and cross-error.

The accident occurred on January 3, 1963, at approximately 10:15 p. m., in Chesterfield county, a short distance west of Richmond, on U. S. Route 360, within an intersection near Manchester High School. At the point of the accident Route 360 is a four-lane highway, divided by a narrow dirt-filled median strip, and runs generally east and west. The traffic lanes, 12 feet wide, are marked on the blacktop surface by broken white lines. A four-foot shoulder runs along the northern edge of the road. A small unnamed road enters highway 360 from the north and there is an opening in the median strip per-mitting access to all four lanes. The small road lies between

Manchester High School on the west and a Tastee-Freez Drive-In on the east. Further east from the intersection is a Bi-Rite Food Store approximately 130-140 feet from the intersection. Approaching from the east there is a slight hill which reaches its crest about 550 feet from the side road. The speed limit on the highway at and near the intersection is 45 miles per hour. A stop sign is posted on the small road, about 15 feet from Route 360, for traffic entering Route 360.

Canupp, the plaintiff, testified that he approached the hill on the east side of the intersection in the outside westbound lane, driving his automobile "about 45 miles per hour," with his lights on bright beam; that upon reaching the crest of the hill, he saw no traffic in front of him, but did see approaching from the opposite direction three or four cars and a tractor-trailer; that the first of these cars was "pretty close," and was followed by two or three other cars for which he dimmed his lights; and that the tractor-trailer was "a right good distance" down the road in the lane next to the median strip passing the last eastbound car. He said that "about at the intersection," the lights on the tractor-trailer were on high beam, and the glare prevented him from seeing anything beyond it, except the traffic lines, which "started fading out at a certain distance;" that on account of the glare, he looked toward the edge of the road; that his automobile met and passed the tractor-trailer at the entrance to the Bi-Rite Food Store about 130 or 140 feet from the scene of the accident; that when the tractor-trailer passed him, he "saw an automobile cross-ways of the road," the rear of which was next to the edge of the road, and the front in the passing lane; that he could not tell whether the automobile was moving or stopped; that he applied his brakes and tried to stop; that when he found that he could not stop, he turned the steering wheel of his car "to the left to try to go in front of him," and his right front fender collided with the driver's door on the left side of Wade's Chevrolet automobile. Canupp said that he was familiar with the side road that entered Route 360 and with the driveways to the Bi-Rite Food Store and the School.

A police officer, who arrived on the scene shortly after the accident, testified that Wade told him that as he "pulled out" on Route 360, his car "cut off" and he could not get it started again. He said Canupp told him that as he came up over the hill, approximately 550 feet east of the intersection, he saw the car in the road, tried to avoid striking it, but could not do so. He was not told by Canupp,

at that time, that the lights from another car interfered with his driving. The officer found debris from the collision in the center of the westbound lanes.

Wade testified that, with his wife and three children, he stopped at the Tastee Freez Drive-In on the north side of Route 360 and purchased some hamburgers; that after eating the hamburgers they left the drive-in, entered the adjacent small road leading to Route 360 from the north, "pulled to the corner and stopped." He then "waited for traffic to clear both ways," and when all of the lanes of Route 360 "were perfectly clear and free of traffic," proceeded into the intersection with the intention to cross the two westbound lanes, and make a left turn to go east towards Richmond; that "there was then no sign of Canupp's car whatsoever or any car coming from either direction;" that as he crossed the westbound driving lane his motor "cut off, for what reason he did not know," leaving him stalled in the center of the westbound lanes; that as his car had automatic transmission, he took it out of gear and attempted to re-start it; and that while he was "in the process of turning the ignition on" Canupp approached from the east "over 500 feet distant," skidded 39 feet in the driving lane of westbound traffic and then turned to the left to the passing lane, skidded 60 more feet, and struck his car on the left side. He estimated the speed of Canupp's car as "in excess of 50 to 55 miles per hour." He also said that there was a 10 to 12 feet wide space behind his car, in the westbound driving lane and road shoulder, on which Canupp could have safely passed.

Mrs. Helen Wade, wife of the defendant, was seated on the front seat of Wade's car, and their three children were in the rear seat. Her testimony and that of one of the children, Joyce Wade, was substantially the same as that of the defendant. Mrs. Wade said that Canupp's car was being operated at between 55 and 60 miles per hour, and that its speed was not changed from the first time she saw it until it hit her car. Joyce said, "He wasn't going 45; he was going faster."

The testimony concerning the accident is in sharp conflict in several particulars. It is conflicting as to whether Canupp was operating his car at a lawful, or at an excessive rate of speed, under the circumstances and conditions existing; as to whether or not he kept a proper lookout; as to whether he held his car under proper control when he was blinded by glaring lights; and as to whether he could have avoided the collision by driving behind the stalled car. It is conflicting as to whether or not Wade, in the exercise of reasonable care, should

have seen the Canupp car approaching before he entered the intersection; as to the presence and location of the eastbound tractor-trailer immediately before the collision; and as to whether Wade entered the intersection when the highway was clear of all vehicles proceeding east and west of the point of the accident.

We have repeatedly affirmed the principle that when the evidence is in conflict, negligence and proximate cause are questions for the jury.

In the recent case of *Adams* v. *Allen*, 202 Va. 941, 945, 946, 121 S. E. 2d 364, we said this:

"Generally, the questions of negligence and contributory negligence are for the jury. Whether a case involving such questions should be submitted to a jury, or decided by the court must, of necessity, depend upon the particular facts of each case. *Steele* v. *Crocker*, 191 Va. 873, 880, 62 S. E. 2d 850; *Va. Elec. & Power Co.* v. *Wright*, 170 Va. 442, 446, 196 S. E. 580, 581.

"We recognize that in a proper case the court should hold, as a matter of law, that negligence of a party does or does not exist, and thus remove any consideration thereof from the jury.

"Such action should be taken by a trial court, however, only where the facts permit of no other inference or conclusion but that a party is or is not guilty of negligence. *Nehi Bottling Co., Inc.* v. *Lambert*, 196 Va. 949, 955, 86 S. E. 2d 156, 159. *Penoso* v. *D. Pender Grocery Co.*, 177 Va. 245, 248, 249, 13 S. E. 2d 310, 312."

In *Giannone* v. *Johnson, Adm'x*, 204 Va. 493, 496, 132 S. E. 2d 445, in which we reversed a trial court for setting aside a verdict by a jury, this is said:

"A determination, as a matter of law, that a party is guilty of, or is free from, negligence should be made only where the evidence is such that reasonable men could reach but one conclusion thereon; where fair-minded men, weighing the evidence and drawing all just inferences therefrom, would not differ in their views with relation thereto; where the evidence is without conflict and permits of one, and only one, fair result." (Citing cases.)

The plaintiff, Canupp, argues that the evidence, as a whole, and the physical facts were such to make out a *prima facie* case in his favor. That suggestion is answered in *Weddle, Administratrix* v. *Draper*, 204 Va. 319, 322, 130 S. E. 2d 462, where we said:

"Negligence cannot be presumed from the mere happening of an accident. The burden is on the plaintiff who alleges negligence to produce evidence of preponderating weight from which the jury can

find that the defendant was guilty of negligence which was a proximate cause of the accident. The evidence produced must prove more than a probability of negligence and any inferences therefrom must be based on facts, not on presumptions. It is incumbent on the plaintiff who alleges negligence to show why and how the accident happened, and if that is left to conjecture, guess or random judgment, he cannot recover. *Brooks, Adm'r v. Hufham*, 200 Va. 488, 494, 106 S. E. 2d 631, 636; *Murphy v. Saunders, Inc.*, 202 Va. 913, 917, 121 S. E. 2d 375, 378; *Spurlin, Administratrix v. Richardson*, 203 Va. 984, 987, 128 S. E. 2d 273, 276; 13 Mich. Jur., Negligence, § 58, p. 584."

█ We find no merit in plaintiff's motion to dismiss the "cross-appeal" of the appellee (Wade) on the ground that no petition for a writ of error was filed by the appellee.

Defendant-appellee has not filed a "cross-appeal". He is simply relying upon his assignment of cross-error to the judgment of the trial court, to which the plaintiff has obtained this appeal.

This is but one case, and when the writ of error was granted plaintiff, it brought to this Court all issues which had been duly presented and preserved in the record. Here, the defendant-appellee has made and preserved his assignment of cross-error, designated parts of the record for printing, and the form and contents of his brief comply with the provisions of Rule of Court 5:12, § 2.

Cf. *Strock v. MacNicholl*, 196 Va. 734, 738, 85 S. E. 2d 263.

In view of the conflicts in the evidence, we cannot say, as a matter of law, that either of the parties or both were free from negligence, without which the collision would have not occurred. The evidence was in such conflict on material questions that fair-minded men may differ on the inferences and conclusions to be drawn from it, dependent upon the weight given to the testimony of the witnesses. Those questions were for the jury, and the court erred in striking the evidence of each party. Consequently, the judgment complained of is reversed and set aside, and the case remanded for a new trial on all issues properly raised.

*Reversed and remanded.*