## Staunton

KARL GORDON WAGNER v. MABEL MICHAEL FIERY, TRADING, ETC., ET AL.

September 10, 1965.

Record No. 5992.

Present, All the Justices.

*J. Sloan Kuykendall (Julian S. Brewer, Jr.; Kuykendall & Whiting*, on brief), for the plaintiff in error.

*Douglas A. Clark*, for the defendants in error.

SNEAD, J., delivered the opinion of the court.

■ This action was instituted by Karl Gordon Wagner, plaintiff, against Mabel Michael Fiery, trading as Michael's Transfer; Mabel Lynn Michael, trading as Michael's Transfer, and Wade Layman Dove, defendants, to recover damages for personal injuries he allegedly sustained when the automobile he was driving was struck from the rear by a tractor (without a trailer attached) operated by defendant Dove while in the employment of Michael's Transfer. A jury trial resulted in a verdict for defendants. After overruling plaintiff's motion to set aside the verdict, the trial court entered judgment on the verdict. Plaintiff is here on a writ of error.

The mishap occurred on May 3, 1961, at about 12:30 p.m. on U. S. Route 340 between Charles Town, West Virginia and Berryville, Virginia, approximately 250 yards inside the Virginia border line. At the scene, the highway consisted of one northbound lane and one southbound lane which were divided by a broken white line. The weather was clear, and the macadam surface of the road was dry. Wagner, the plaintiff, was operating his automobile in the southbound lane at a speed of approximately 40 to 45 miles an hour. He was accompanied by a friend, Jerry Krejcik, who rode on the front seat. The destination of the two men was Culpeper, but it "was a beautiful spring day," and they were discussing the possibility of "taking some side roads or something or another to observe the beautiful friendly countryside." Krejcik was looking at a map, and he thought that if a place could be found where the car could be driven off the roadway then he and Wagner could examine the map to determine what side roads they might take.

Plaintiff was aware that a tractor (Dove's) had been following him "at a reasonable distance" of "maybe two or three car lengths." As plaintiff approached a "slight upgrade" in the road followed by a "declining curve to the right" he "eased up" on the accelerator and diminished his speed, he said, "slightly" or about "five to ten miles an hour." At that time he did not look into his rear view mirror to determine how close the tractor was behind him. He gave no hand signal of his intention to slow down nor did he indicate such inten-

tion by means of his brake lights. The evidence shows that plaintiff's vehicle was traveling at a speed of 25 to 35 miles an hour in the right lane when its left rear was struck by the right front of the tractor driven by Dove. The tractor "turned around in the road" and faced in the opposite direction. The automobile "went forward and off to the right and over a little culvert or ditch," and was brought to a standstill by an embankment. However, there was no showing that the car was damaged. Plaintiff drove it from the scene after the accident had been investigated by a State trooper.

Krejcik testified that he was sitting "half sideways in the front seat" as Wagner's car approached the curve; that he heard the wheels of the tractor "slapping the road"; and that "from the sound of the wheels" he could tell that the vehicle was "bouncing." When he looked back he observed that the tractor was "closing down on us" and he shouted to Wagner "to hit the gas." Immediately thereafter, he said, plaintiff's car was struck in the rear.

Dove testified that he had been following plaintiff's automobile in the southbound lane at a distance of 50 to 60 feet and at a speed of 40 miles an hour; that plaintiff's car "was gradually running slower"; that without sounding his horn he drove his tractor partly into the left or northbound lane for the purpose of passing plaintiff's vehicle; that as he did so he saw the curve "coming up" and could not see ahead; that he turned back into the right or southbound lane, and that plaintiff's vehicle slowed down "a whole lot" which he estimated to be "ten or fifteen miles an hour."

Dove further testified that he suddenly applied his brakes, but the tractor "started bouncing" and struck the rear of plaintiff's automobile, and that his tractor left tire marks on the highway prior to the point of collision. Later, in response to a question propounded by the court Dove stated, contrary to what he had previously said, that plaintiff's vehicle did not start to slow down until after he had decided not to pass and had turned back into the right or southbound lane. He said that immediately after he turned back plaintiff's car "started slowing down."

Trooper D. A. Sheetz, the investigating officer, stated that he found tire marks 96 feet long in the southbound lane which began in a "fairly straight line and then went off to the left or in towards the center of the road." He also observed a short set of tire marks with spaces between them "off the right side of the road in a southwesterly direction." On cross-examination defendants made the trooper their

own witness. In response to a question concerning what plaintiff had told him about the accident, the trooper stated:

"He [plaintiff] said he was headed south on Route 340 and was slowing up to pull off when he found a proper place, to look at a road map, and then he got hit. He knew the truck [tractor] was behind, he didn't know how far but considered it to be a safe distance. He was not giving any sort of signal as he was not ready to turn off yet."

The crucial question presented by plaintiff's assignments of error is whether the court erred in granting Instruction No. 5, which provided:

"The Court instructs the jury that if they believe from the greater weight of the evidence that the *plaintiff intended to stop, turn, or partly turn, from a direct line,* then it was his duty, first, to see that such movement could be made in reasonable safety, and, if the operation of the defendant's vehicle might reasonably be affected by such movement, *to give a signal of his intention to make such movement.*

"If the plaintiff failed in such duties and *suddenly slowed* the speed of his vehicle, he was guilty of negligence, and if the jury believe from the greater weight of the evidence that such negligence was a proximate cause of the collision, they must find a verdict for the defendants." (Italics supplied.)

Plaintiff contends, among other things, that this instruction was erroneous because there was no evidence to support a finding that at the time of impact he "intended to stop, turn, or partly turn, from a direct line" or that he "suddenly slowed" the speed of his vehicle. For reasons stated *infra* we are of opinion that plaintiff's contention is correct.

In *Parker* v. *Leavitt, Adm'r,* 201 Va. 919, 926, 927, 114 S.E. 2d 732 we said:

"Nothing is better settled in Virginia than that an instruction should not be given when there is no evidence tending to prove the facts upon which the instruction is based. 10 Michie Jur., Instructions, § 20, pages 213 *et seq.* and a multitude of cases cited." See also *Baker, Adm'r* v. *Richardson,* 201 Va. 834, 838, 839, 114 S.E. 2d 599; *Gabbard* v. *Knight,* 202 Va. 40, 47, 116 S.E. 2d 73; *MacDonald* v. *Firth,* 202 Va. 900, 904, 121 S.E. 2d 369; *Irvan* v. *Oil Company,* 205 Va. 1, 5, 135 S.E. 2d 153.

The reason for this principle of law is given in 10 M.J., Instructions, § 20, p. 213 *et seq., supra.* There it is said:

"It has been repeatedly held that an instruction should not be

given when there is no evidence tending to prove the facts upon which the instruction is based, for the reason that the tendency of such instruction is to mislead the jury by withdrawing their attention from the legitimate points involved in the issue. Juries are sufficiently prone to indulge in conjectures, without having possible facts not in evidence suggested for their consideration. And before either party is entitled to an instruction there must be more than a scintilla of evidence introduced."

The first paragraph of Instruction No. 5 was apparently based upon the provisions of Code, § 46.1-216.[1] There was no evidence adduced, however, to show that at the time of the collision plaintiff intended "to * * * stop, turn or partly turn from a direct line" as contemplated by the statute.

It is true that plaintiff and Krejcik were discussing the possibility of taking a side road for the purpose of sightseeing and anticipated that they would pull off the roadway and observe the map together when a proper place could be found. It is also true that trooper Sheetz testified that "to the best of my recollection" there was sufficient room for a motorist to pull off the hard surface onto the shoulder of the road in the vicinity of the accident. On the other hand, plaintiff testified that there was "no place to pull off to the side of the road." In either event, the record shows that the collision occurred while plaintiff's vehicle was still entirely within the southbound lane proceeding at a speed of 25 to 35 miles an hour, and that plaintiff had no immediate intention to stop or turn from a direct line. Trooper Sheetz, while testifying as a witness for defendants, said that plaintiff told him that "[h]e was not giving any sort of signal as he was not ready to turn off yet."

The second paragraph of Instruction No. 5 permitted the jury to find plaintiff guilty of negligence if he failed to give a signal of his intention to "stop, turn, or partly turn, from a direct line" and "suddenly slowed" the speed of his automobile, but the only fair inference to be drawn from the evidence is that plaintiff's vehicle was not "suddenly slowed."

The uncontradicted evidence was that plaintiff had been driving down the highway at a rate of between 40 and 45 miles an hour before he slackened his speed. Plaintiff testified that as he approached

---

[1] Sec. 46.1-216. "Every driver who intends to start, back, stop, turn or partly turn from a direct line shall first see that such movement can be made in safety and whenever the operation of any other vehicle may be affected by such movement shall give such signals as are required in §§ 46.1-217, 46.1-218 or 46.1-220, plainly visible to the driver of such other vehicle, of his intention to make such movement."

the curve in the road he "eased up" on the accelerator "slightly" thereby reducing his speed about "five to ten miles an hour." Krejcik said that plaintiff's car was moving between 25 and 35 miles an hour when it was struck. Dove testified on direct examination that plaintiff's vehicle slowed down "a whole lot," but he explained this statement by saying that the diminution of speed was "ten or fifteen miles an hour." On cross-examination Dove stated that it "slowed down fast" and that "he was gradually running slower." Finally, when asked whether plaintiff had slowed down "suddenly" or "just gradually," his response was: "Well, I wouldn't say it was suddenly. He was going upgrade, slowing down as he did."

Defendants argue that Code, § 46.1-216, *supra*, when read in conjunction with Code, § 46.1-217,[2] which is incorporated into the former section by reference, requires a driver to give a signal of his intention to "slow down" for the purpose of stopping, turning or partly turning, and that plaintiff was guilty of negligence when he failed to comply with this statutory duty. Plaintiff contends that § 46.1-216 does not require a motorist to give a signal of his intention to slow down, and that even if such a signal is required, his failure to give it was not a proximate cause of the accident.

Sections 46.1-216 and 46.1-217 are related and deal with the same subject matter. They should be read and construed together. When this is done it is evident that the General Assembly intended that a motorist be required to give a signal of his intention to slow down for the purpose of stopping, turning or partly turning from a direct line whenever the operation of any other vehicle may be affected. The words "slowing down" must be given a reasonable construction. They were never intended to apply where a motorist slightly reduces his speed on a highway by easing up on the accelerator without any present intention of stopping, turning or partly turning from a direct line.

Since we find that there was not sufficient evidence adduced tending to prove the facts upon which Instruction No. 5 was based, we hold that the granting of it constituted prejudicial error.

In other errors assigned plaintiff contends, *inter alia*, that the

---

[2] Sec. 46.1-217. "(a) The signal required by § 46.1-216 shall be given by means of the hand and arm or by some mechanical or electrical device approved by the Superintendent, in the manner herein specified. Whenever the signal is given by means of the hand and arm, the driver shall indicate his intention to start, stop, turn or partly turn by extending the hand and arm from and beyond the left side of the vehicle, in the manner following:

\*　　\*　　\*　　\*　　\*

"(3) For slowing down or to stop, the arm shall be extended downward."

trial court erred in overruling his motion to set aside the verdict as being contrary to the law and evidence and to enter judgment in his behalf, because the evidence shows that, as a matter of law, he was free of contributory negligence and defendants were guilty of negligence which was the sole proximate cause of the collision.

We are unable to state whether the jury's verdict for defendants was based on a finding (1) that plaintiff was guilty of contributory negligence, or (2) that defendants were not guilty of primary negligence, or (3) that plaintiff failed to prove with reasonable certainty that his alleged injuries or any aggravation of a pre-existing condition resulted from the collision.

Generally, negligence, contributory negligence, and proximate cause are questions for the jury. It is only where reasonable men may draw but one conclusion from the facts that they become questions of law for the court to decide. *Greyhound Lines* v. *Brown*, 203 Va. 950, 952, 953, 128 S.E. 2d 267.

Here, plaintiff knew that Dove had been traveling about "two or three car lengths" behind him for some distance. There was no compelling reason for him to reduce his speed, yet he did so without first looking into his rear view mirror to determine the proximity of the tractor to his automobile and whether it was safe to slacken his speed at the time. It was a question for the jury to decide whether he exercised ordinary care under the circumstances. Hence, we cannot say that plaintiff was, as a matter of law, free of contributory negligence. Neither can we say, under the evidence, that defendants were, as a matter of law, guilty of negligence which was the sole proximate cause of the accident. That issue also presented a jury question.

Because of the error in granting Instruction No. 5, the judgment appealed from is reversed; the verdict set aside; and the case remanded for a new trial.

*Reversed and remanded.*