## 𝕾𝖙𝖆𝖚𝖓𝖙𝖔𝖓

RALPH KELLEY v. ELIZABETH GAYLE HENLEY, ADMINISTRATRIX OF
THE ESTATE OF CARROLL DARLINGTON HENLEY, DECEASED.

September 8, 1967.

Record No. 6462.

Present, Eggleston, C.J., and Spratley, Buchanan, Snead, Carrico, and Gordon, JJ.

*G. Kenneth Miller (John G. May, Jr.; May, Garnett, Miller and Newman,* on brief), for plaintiff in error.

*James M. Minor, Jr. (William C. Wood; Minor, Thompson, Savage, White and Smithers,* on brief), for defendants in error.

CARRICO, J., delivered the opinion of the court.

Elizabeth Gayle Henley, administratrix of the estate of Carroll Darlington Henley, deceased, the plaintiff, filed a motion for judgment against Ralph Kelley, the defendant, seeking recovery of damages for the alleged wrongful death of Carroll Darlington Henley,

who was killed when the automobile being operated by him was in collision with a vehicle operated by the defendant.

The defendant filed grounds of defense denying negligence on his part and asserting the contributory negligence of the deceased as an affirmative defense.

The case was tried before a jury. The court overruled the defendant's motions to strike the evidence made at the end of the plaintiff's case and after all the evidence was concluded. The jury returned a verdict in favor of the plaintiff in the sum of $25,000. The court overruled the defendant's motion to set aside the verdict and entered final judgment on the verdict. The defendant was granted a writ of error.

The accident occurred at approximately 7:00 a. m. on October 30, 1964, on State Route 640 in Hanover County, near Shady Grove Church. The weather was clear and the road surface was dry. Route 640 runs generally north and south, is blacktopped to a width of 19 feet, and is 24 feet wide from ditch line to ditch line. According to the state trooper who investigated the accident, the speed limit on Route 640 at the scene of the collision was 55 m.p.h., although not so posted.

The deceased resided on the west side of Route 640, and his private driveway entered the highway at a right angle. North of and 295 feet from the driveway is a hillcrest. The highway from the driveway to the hillcrest is upgrade and straight with no obstructions to the visibility of the operator of a vehicle about to enter the highway from the driveway other than the hillcrest itself, beyond which traffic is not visible.

The deceased left his residence, located approximately 100 feet from the highway, on the morning of the accident and entered his Volkswagen to drive to his place of employment. His young son, Clark, eight or nine years old at the time, watched him from a picture window in the living room at the front of the residence.

According to Clark's testimony, the deceased drove to the end of the driveway and stopped. He then started onto the highway, turning to the left. The last time the boy saw his father's car, "it was just pulling out of the driveway . . . halfway in and halfway out . . . the front wheels were on the pavement and the back wheels weren't." As he turned away from the window, Clark "took a quick glance . . . to the crest of the hill" and neither saw nor heard any vehicles approaching from the north. He had left the window and walked

into the kitchen, a distance of 18 feet, when he heard a "thud" from "the front of the house."

Mrs. Henley, widow of the deceased, testified that after her husband departed for work, she "went and got another cup of coffee and went and sat back down" in the kitchen. She heard a noise, went to the front door, saw the cars in the road, and called the rescue squad. She then ran to the highway and found that her husband had been thrown from his automobile. She located him lying in a field on the east side of the road, 10 feet from the Volkswagen.

Melvin Davis, a witness called by the plaintiff, testified that on the morning of the accident, he was riding on the rear seat of an automobile being operated by Lawrence Hill in a southerly direction on Route 640. Davis stated that the defendant passed the Hill vehicle a short distance from where the accident occurred and that the defendant was then proceeding at a speed of 42 or 43 m.p.h. Davis further testified that the Hill vehicle followed the defendant's automobile down the road and that when the Hill automobile reached the crest of the hill, Davis saw the Henley Volkswagen pull out into the road when the defendant was not "much more than about a car length or two car lengths" away. Davis called to the operator of the car in which he was riding, "Look a-yonder" and "at that time, the cars hit."

John G. Hendricks, the investigating state trooper, testified as a witness for the plaintiff. He stated that when he arrived on the accident scene, he found two cars in the ditch on the east side of Route 640, "slightly south" of the Henley driveway. The two vehicles were "practically touching" and were "facing each other," the defendant's car "facing north," or in the opposite direction from which it had been traveling, and the Henley Volkswagen "facing south." The trooper found debris scattered over a wide area, "just north of the center of the driveway" and "a little to the east, just about center" of Route 640. The trooper further stated that he observed a single skid mark approximately 32 1/2 feet long, shown by a photograph to have been slightly west of the center of the highway. The trooper also testified that the defendant told him that he had seen the deceased's Volkswagen "stopped in a driveway" and that "as he drew near the vehicle pulled out in front."

The defendant was called as an adverse witness by the plaintiff. He testified that he was a rural mail carrier and was familiar with Route 640, traveling the road eighteen times a week. He stated that

on the morning of the accident, he was on his way to work in his 1964 Chevrolet Chevelle, proceeding in a southerly direction on Route 640 at a speed of 50 m.p.h. when he reached the crest of the hill north of the Henley residence and that he continued at the same speed until he applied his brakes just before the collision. He said that the skid mark, found by the state trooper, was made by his car.

While later testifying on his own behalf, the defendant stated that when he "got to the top of the crest of the hill, well, into the crest of the top of the hill a little bit," he saw the Henley vehicle stopped at the end of the driveway and that when he was "about a car length" away, the Volkswagen "just jumped right in front" of him. He said that he then applied his brakes and turned his vehicle to the left. The front of his automobile struck the left side of the Henley car on an angle after "a little small portion of . . . the front part of the car had gotten by."

On cross-examination, the defendant stated that the skid mark, found by the state trooper, was made by his right wheel and that at the time the impact occurred, two-thirds of his vehicle was on the left side of the road.

Ernest Hill, a witness called by the defendant, testified that he was riding in the automobile operated by his brother, Lawrence Hill. He stated that the defendant's car passed the Hill vehicle at a speed of approximately 50 m.p.h. shortly before the accident occurred. The witness said that he did not see the collision because he was facing the rear seat, talking to Melvin Davis. When the latter said, "Look," Ernest turned around and saw what "looked like a pile of smoke or dust or something."

Lawrence Hill, testifying as a witness for the defendant, stated that the vehicle he was operating was passed by the defendant's car shortly before the collision occurred. Lawrence said that after the defendant passed, it "looked like he wasn't going too fast from me." The witness stated that by the time he got to the top of the hill the collision had already occurred and that he did not see it take place; but when he "riz the top of the hill there," he saw "this little Volkswagen rolling over."

[1] Although the defendant argues briefly that the evidence was insufficient to sustain a finding that he was negligent, his principal contention is that the deceased was guilty of contributory negligence as a matter of law. We need discuss only that principal contention.

We are not unmindful of the fact that the plaintiff has received

a verdict at the hands of the jury; and we are fully cognizant of the rule that, ordinarily, questions of negligence, both primary and contributory, are to be settled by a jury. But where the facts are such that reasonable men should draw but one conclusion therefrom, the presence or absence of negligence becomes a matter of law to be decided by the court. Whether a negligence case should be submitted to a jury or decided by the court must, of necessity, be determined from the facts of the particular case. *Brown* v. *Damron*, 197 Va. 309, 313, 89 S. E. 2d 54; *Bottling Co.* v. *Lambert*, 196 Va. 949, 955, 86 S. E. 2d 156.

Code, § 46.1-223 provides:

"The driver of a vehicle entering a public highway or sidewalk from a private road, driveway, alley or building shall stop immediately before entering such highway or sidewalk and, upon entering such highway or sidewalk, shall yield the right-of-way to all vehicles approaching on such public highway or to all pedestrians or vehicles approaching on such public sidewalk."

Thus, the deceased had the duty not only to bring his vehicle to a stop before entering the highway, but also the duty to yield the right-of-way to all vehicles approaching thereon. The reasonable discharge of the duty to yield necessarily entailed the antecedent duties of maintaining a proper lookout and of heeding what such a lookout revealed.

We are of opinion that the evidence showed, as a matter of law, that the deceased failed to observe the duties imposed upon him for his own safety.

Melvin Davis, a distinterested witness presented by the plaintiff, testified that the deceased entered the highway when the defendant's vehicle was not "much more than about a car length or two car lengths" away.

The defendant, testifying on his own behalf, stated that he saw the Volkswagen stopped at the end of the Henley driveway when he cleared the crest of the hill and that it "just jumped right in front" of him when he was "about a car length" away.

This is the only eyewitness testimony in the record as to how the accident occurred. But in addition, the state trooper, called as a witness by the plaintiff, testified that the defendant told him, immediately after the accident, that he had seen the deceased's Volkswagen

"stopped in a driveway" and that "as he drew near the vehicle pulled out in front."

Further, the physical evidence showed that the front of the defendant's vehicle collided with the left side of the Volkswagen of the deceased and that the impact occurred "just north of the center of the driveway" and "a little to the east, just about center" of Route 640.

All this evidence leads to but one inevitable conclusion—that the deceased entered the highway when the defendant's vehicle was dangerously close, under such circumstances that the defendant, whether using due care or not, could do no more than attempt to stop or to miss the Volkswagen when he saw it come into his path.

It is unfortunately clear that, although the deceased stopped before entering the highway, he either did not look to see if traffic was approaching or, if he looked, failed to see and to heed what obviously was there to be seen and to be heeded. In either event, the result is inescapable that the deceased was negligent and that his negligence contributed to his untimely death.

The plaintiff, however, although she called Melvin Davis as a witness and presented his testimony to the jury, would now have us hold that such testimony was incredible because Lawrence Hill, in whose vehicle Davis was riding, testified that when he reached the crest of the hill, the accident had already occurred. But it cannot be disputed that Davis called Lawrence's attention to the collision or that Lawrence saw "this little Volkswagen rolling over." Thus, there is involved a question of split-second timing as to what was seen first by whom; and it cannot be said, therefore, that the testimony of Davis was incredible.

[2] The plaintiff also argues that the testimony of the defendant was incredible because he stated that the Volkswagen "just jumped right in front" of him when he was "about a car length" away. The plaintiff says that by taking the defendant's reaction time after he saw the deceased entering the highway, the defendant's admitted speed, and the 32 1/2 feet of skid mark made by his vehicle, it can be demonstrated that the defendant was not one car length, or 9 3/4 feet, but nine car lengths, or 87.47 feet, away from the deceased when the latter entered the highway.

One answer to this argument is that a witness to an automobile accident is not held to such mathematical certainty in giving an estimate of distance, especially where he qualifies his estimate by the use

of the word "about." The more obvious answer, of course, is that, accepting the plaintiff's mathematics at full worth, it is not the exercise of due care for one's own safety to enter a highway from a private driveway when a vehicle is bearing down at 50 m.p.h. from only 87.47 feet away.

The plaintiff finally says that the testimony of the son, Clark Henley, that when the Volkswagen was "halfway in and halfway out" of the driveway, he "took a quick glance" to the crest of the hill and saw no vehicles approaching from the north, showed that "there were no vehicles in sight as [the deceased] was moving and was halfway onto" Route 640. The plaintiff also says that Clark's testimony contradicted that of Melvin Davis.

The boy's testimony cannot, however, have the effect the plaintiff would have us give it. The physical fact that the collision occurred in the place and in the manner it did is conclusive that the defendant's vehicle had to be in sight of the deceased when the latter entered the highway. Why the boy did not see the defendant's car may be explained by the fact that his "quick glance" was ineffective to enable him to see the vehicle or by the fact that the pine trees, 4 to 18 inches in diameter, located in the Henley yard and on the adjoining property to the north, obscured his view.

Nor is Clark's testimony sufficient to contradict the testimony of Melvin Davis. The boy could not possibly have known what happened after he turned from the window and walked the 18 feet into the kitchen, where he heard the "thud." So far as his testimony is concerned, what occurred on the highway during that interval must be left to speculation and conjecture, which are not sufficient to contradict anyone.

The cases of *Newman* v. *Dalton*, 206 Va. 119, 141 S. E. 2d 677 and *Canupp* v. *Wade*, 205 Va. 850, 140 S. E. 2d 659, relied upon by the plaintiff, are clearly distinguishable from the case before us and are not, therefore, controlling.

In the *Newman* case, the plaintiff was proceeding north on a secondary road approaching a primary highway. A stop sign controlled traffic about to enter the intersection from the secondary road. Visibility to the west was 875 feet. The plaintiff stopped, looked first to the west and then to the east, and saw no traffic approaching from either direction. He proceeded slowly onto the main highway and when the front of his pickup truck had reached a point 3 or 4 feet into the highway, he looked again to the west and saw the defendant's

dump truck proceeding east, 468 feet away. The plaintiff did not accelerate his vehicle because of the presence of loose gravel on the highway nor did he look again to his left. He was struck by the defendant's truck when the front of his vehicle had cleared the main highway and the rear was 3 feet 11 inches past the center line. We held that the question of the plaintiff's contributory negligence was for the jury to decide.

In the *Canupp* case, the plaintiff was proceeding west on U.S. Route 360, a four-lane divided highway, at night. The defendant, who filed a counterclaim, approached the main highway from the north on an unnamed side road. The defendant testified that he stopped before entering the highway and waited until all the lanes of Route 360 were free of traffic. He proceeded into the intersection with the intention to cross the two westbound lanes and make a left turn to go east. As he was crossing the westbound driving lane, the defendant's motor cut off, leaving him stalled in the center of the westbound lanes. While attempting to restart the car, he was struck by the skidding automobile of the plaintiff, who testified that he could not see the defendant's car until nearly upon it because he was blinded by the lights of eastbound vehicles. The trial court struck the evidence of both parties. We held that the evidence presented questions to be decided by the jury.

The plaintiff here has filed a number of assignments of cross-error. Since those assignments deal only with rulings of the trial court upon instructions, it is not necessary to discuss them in view of our conclusion that the deceased was guilty of contributory negligence as a matter of law.

The judgment of the trial court will be reversed, the verdict of the jury set aside, and final judgment entered in favor of the defendant.

*Reversed and final judgment.*