# MARTHA LAWLER VAN BUREN

## V.

# GLENN PATRICK SIMMONS

Record No. 841887

March 4, 1988

Present: Carrico, C.J., Poff, Compton, Russell, Thomas and Whiting, JJ.,
and Gordon, Retired Justice

*George J. Kostel (Kostel, Watson, Snyder & Pasco,* on brief), for appellant.

*Michael McHale Collins (J. Gregory Mooney; Collins, Crackel & Mooney,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this personal injury action arising from a motor vehicle accident, we consider whether the defendant was negligent as a matter of law and whether the trial court misdirected the jury.

Appellant Martha Lawler Van Buren brought this action against appellee Glenn Patrick Simmons seeking recovery for injuries allegedly sustained when vehicles operated by the parties collided. Upon conclusion of the evidence in a jury trial, the plaintiff moved the court to rule the defendant was guilty of negligence as a matter of law. The motion was overruled and the case was submitted to the jury on issues of primary and contributory negligence, proximate cause, and damages. The jury found for the defendant and judgment was entered on the verdict. We awarded the plaintiff this appeal, limited to consideration of the foregoing issues.

The incident occurred June 3, 1981 about 5:00 p.m. on Route 646, a narrow, two-lane, hard-surfaced roadway, which is a short "little spur road off" Route 42 in Alleghany County. Route 646 runs north and south, is approximately 13 feet wide, and has no marked center line. At the scene of the accident, the roadway is

straight and level. The speed limit is 55 miles per hour. Apparently, rain was falling at the time of the accident.

The plaintiff, age 55 and employed as a circulation manager for a local newspaper, was operating a 1974 Dodge Dart north on Route 646 accompanied by her daughter and grandchild. The defendant, age 26, was operating a 1967 Oldsmobile two-door sedan east in a private driveway, bordered by a fence, that enters Route 646 at nearly a right angle from the west side of the highway.

The facts about how the accident happened were in conflict. The plaintiff testified that she was operating her vehicle on her proper side of the roadway at a speed of 15-20 miles per hour and was looking "straight ahead." She observed the defendant's vehicle "coming down the driveway" and "thought he would stop when he got to the edge of the road." The plaintiff stated that as she reached the driveway, her daughter exclaimed, " 'Mama, watch out.' " According to the plaintiff, the defendant's vehicle travelled into the highway and struck the left side of her car knocking it onto the east shoulder of the road and back into the highway. The daughter, occupying the right front seat in the vehicle, testified that, "just prior to coming onto the highway," the defendant "was looking the other way, and then he just stepped on it."

The defendant testified that he was operating his vehicle "real slow" along the driveway across a cattle guard which was near the highway. He said that, as he approached the highway intending to make a right turn, he looked to his right but did not see the plaintiff's vehicle. He testified that "you can't see" to the right because of high grass and that a driver must "come out just a little bit, like to the end of my driveway," to be able to see clearly south on Route 646. The defendant stated he then looked to his left, saw no traffic, and moved his "car on up a little bit." Then he looked to his right a second time and saw the plaintiff driving north in the southbound lane of Route 646, "coming into my mailbox to deliver a paper." A photograph of the scene received in evidence shows mailboxes clustered on the west side of the highway just north of the point where the driveway intersects the roadway.

The defendant testified that he "eased out" and was "just a little bit" into the highway when he saw the plaintiff "coming down the middle of the road." Defendant said he was "just barely creeping then." He stopped and was at a complete stop when the left front corner of his vehicle "tapped" the left side of the plain-

tiff's car. Defendant responded, "Yes, sir" to the statement on cross-examination, "But you came out onto the highway without stopping."

The investigating police officer testified without objection that he determined the point of impact from debris found in the highway. He said the impact occurred one foot into the southbound lane of the highway from the imaginary center line of Route 646 and just south of the imaginary center line of the driveway extended into the highway. He found slight damage to the left front corner of the defendant's vehicle and substantial damage to the left side of the plaintiff's vehicle from just behind the left door post to the rear of the vehicle.

According to the officer, the plaintiff stated at the scene that she was travelling approximately 35 miles per hour and that: " 'I was coming up the road. I saw him at the fence. Expected him to stop. I wasn't really paying attention to him, and then he just hit.' " The officer testified the defendant said at the scene that he drove to the end of the driveway where the fence terminates, looked to the right, "didn't see anything," pulled out, "and then we hit."

On appeal, plaintiff contends the trial court erred in refusing to rule that defendant was guilty of negligence as a matter of law on the grounds that defendant failed to keep a proper lookout and violated Code § 46.1-223. We disagree with these contentions.

■ As applicable here, the statute imposes dual responsibilities upon a driver of a vehicle entering a public highway from a private driveway. The driver must stop immediately before entering the highway and yield the right of way to vehicles approaching on the highway. The defendant's statutory duty, however, required him to yield the right of way to those "lawfully" approaching the intersection. *Temple* v. *Ellington*, 177 Va. 134, 142, 12 S.E.2d 826, 829 (1941).

■ According to the defendant's evidence, he moved slowly to a position which enabled him to see to his right and saw the plaintiff driving her car north in the southbound lane. Thus, even though defendant failed to comply with a portion of the statutory duty by not coming to a complete stop before entering the highway, if the plaintiff was in fact traveling in the southbound lane, she was not "lawfully" approaching the intersection. Moreover, the officer testified that the hard-surfaced portion of the roadway was wide enough to permit "two normal vehicles" headed in opposite direc-

tions to meet and pass safely without either being forced to drive to the shoulder of the road. Consequently, under the defendant's theory of the case, if the plaintiff had driven her vehicle wholly within her proper lane of travel, the vehicles would not have collided. Therefore, we hold that reasonable minds could differ under these facts on the question whether defendant fully violated the statute and, if so, whether such violation was a proximate cause of the accident.

■ We come to the same conclusion on the issue of the defendant's lookout. Visibility was reduced by the high grass on the corner over which both drivers looked to see the other. It was for the jury to say under all the facts whether defendant exercised reasonable care to keep a proper lookout.

The case of *Kelley* v. *Henley*, 208 Va. 264, 156 S.E.2d 618 (1967), relied upon by the plaintiff, is distinguishable on its facts and therefore is not controlling. There, this Court held that a deceased who drove from a stopped position in a private driveway directly into the path of a vehicle on an intersecting highway was guilty of negligence as a matter of law. But in that case, unlike this case, there was no factual issue whether the vehicle approaching on the highway was being lawfully operated in its proper lane of travel.

The plaintiff also contends the trial court committed reversible error in giving, over her objection, Instruction 11. The instruction provided that:

> "[T]he driver of a vehicle has a duty to give, as nearly as possible, one half of the main traveled portion of the highway to a driver proceeding in the opposite direction. When the road is unmarked, the dividing line is the center of the highway.
> "If a driver fails to perform this duty, then he is negligent."

Plaintiff argues that the instruction is inapplicable to the facts of this case because the drivers were not "proceeding in the opposite direction," as contemplated by the statute upon which it was based, Code § 46.1-207. We agree.

■ Section 46.1-207 provides that: "Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other, as nearly as possible, one-half of the

main traveled portion of the roadway." Vehicles approaching each other at right angles, or nearly so, are not "proceeding in opposite directions" within the meaning of the statute. By so instructing the jury, the trial court permitted the jury to find, contrary to the evidence, that defendant had completed a turn onto Route 646 and was, in fact, proceeding south at the time of the accident while the plaintiff was proceeding north, that is, "in opposite directions."

■ The law is settled that an instruction should not be given if there is no evidence tending to prove the facts upon which it is based. Such an instruction tends to mislead and confuse the jury by diverting attention from the legitimate issues in the case. Jurors are likely to indulge in conjecture when facts not in evidence are suggested by the court for their consideration. *Wagner v. Fiery*, 206 Va. 370, 373-74, 143 S.E.2d 876, 879 (1965).

■ Code § 46.1-203, however, requires the driver of a vehicle to drive "upon the right half of the highway" on "all highways of sufficient width . . . unless it is impracticable to travel on such side of the highway." The instruction in this case should have been based on § 46.1-203, not § 46.1-207, because the facts would have supported such an instruction. *See also* Code § 46.1-209.1 (generally requires all vehicles to be driven in the right-hand lane as close as practicable to the right-hand edge of the roadway).

For the error in granting Instruction 11, the judgment of the trial court will be reversed and the case will be remanded for a new trial on all issues.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

POFF, J., concurring.

I concur in the Court's decision but disagree with its analysis of the defendant's duties under Code § 46.1-223.

Applying a predecessor to that statute, in *Temple v. Ellington*, 177 Va. 134, 142, 12 S.E.2d 826, 828-29 (1941), we said:

When a driver on a private road approaches an intersection, *stops, and looks* in both directions for approaching traffic on the public highway, *acting as a reasonably prudent person exercising due care would act*, he is not negligent as a mat-

ter of law if he attempts to enter the intersection *under the belief that he has time and opportunity to cross safely.* He is only required to yield the right of way to those lawfully approaching so near the intersection that he cannot safely enter it.

(Emphasis added.)

As noted by the majority in the case at bar, the defendant's evidence was that "he moved slowly to a position which enabled him to see to his right and saw the plaintiff driving her car north in the southbound lane." The Court concludes that, "even though defendant failed to comply with a portion of the statutory duty by not coming to a complete stop before entering the highway," the defendant was not required to yield to the plaintiff's vehicle if the plaintiff actually was driving her car in a northerly direction in the southbound lane; a driver entering a highway from a private road, the Court says, is not required to yield the right of way to a vehicle not "lawfully" approaching the intersection.

In my view, the rule stated by the Court in *Temple* applies only *after* a driver has reasonably exercised his duties both to stop *and* look for approaching vehicles and then only if a reasonable man would be justified in concluding that he can enter the intersection safely. Whether a driver properly has exercised such duties is a question of fact for the jury.

I also concur to express my concern that the Court's opinion not be construed to afford a driver entering a highway from a private driveway a license to enter in the face of an obvious danger created by a motorist approaching the intersection unlawfully. The fact that the plaintiff may have been traveling in the wrong lane should not excuse the defendant's failure to stop *and* look as required by § 46.1-223 if the proper exercise of those duties would have prevented the accident. *See Kelley* v. *Henley,* 208 Va. 264, 268, 156 S.E.2d 618, 621 (1967) ("The reasonable discharge of the duty to yield necessarily entailed the antecedent duties of maintaining a proper lookout and of heeding what such a lookout revealed.").

THOMAS, J., dissenting.

I disagree with the majority's decision to reverse this case solely on the basis of an instruction which provided, in essence, that the

plaintiff (Van Buren) had a duty to drive on the right side of an unmarked road where another driver was "proceeding in the opposite direction." This instruction was more favorable to Van Buren than the actual state of the law. This is so because, in Virginia, a driver must drive on the right side of the road whether or not another driver is proceeding in the opposite direction. *See* Code § 46.1-203.

The defendant (Simmons) contended that Van Buren could not recover because Van Buren crossed the half way point of the unmarked road and caused the collision. In asserting this defense, Simmons sought an instruction explaining Van Buren's duty to drive on the right half of the roadway.

Van Buren, however, proved that Simmons had not fully entered the roadway at the time of the accident. Thus, Van Buren correctly points out that Simmons was not "proceeding in the opposite direction" at the time of the collision. This fact may be conceded, but it has no legitimate bearing on the proper disposition of this appeal.

The actual instruction, as granted, allowed Van Buren to argue that because Simmons was not fully in the road proceeding in the opposite direction, Van Buren *was not required to drive to the right side of the road.* Under the correct instruction, Van Buren could not have made this argument. Indeed, under the correct instruction Van Buren would have been clearly negligent for failing to drive on her side of the road.

The majority assumes that the jury might somehow have been confused by the instruction. But I submit that the only possible confusion would have favored Van Buren, the plaintiff. Thus, we have a situation where a plaintiff, armed with an instruction more favorable than the law would properly allow, nevertheless lost in a jury trial. This case is a perfect demonstration of the wisdom of Code § 8.01-678, which provides that not every defect in a trial warrants a reversal; the statute reads in pertinent part as follows:

> *When it plainly appears* from the record and the evidence given at the trial that the parties have had a fair trial on the merits and *substantial justice has been reached, no judgment shall be arrested or reversed*:
> . . . .
> 2. For any other defect, imperfection, or omission in the record, or for any error committed on the trial.

(Emphasis added.)

In my opinion, to grant a new trial in a case of this kind is a wholesale waste of judicial resources. On the next go round, the plaintiff will no doubt confront a properly drawn instruction which will be less favorable. If she could not prevail under the most favorable conditions, she should not be given a chance to try again under less favorable conditions. Given the fact that the majority correctly rejected plaintiff's contention that defendant was negligent as a matter of law, and given the altogether favorable language of the instruction complained of by plaintiff, I would end this matter here and now by affirming the judgment of the trial court.

RUSSELL, J., joins in dissent.